**EL PASO NATURAL GAS COMPANY, et al., Plaintiffs Below, Appellants,**

v.

**TRANSAMERICAN NATURAL GAS CORPORATION, Defendant Below, Appellee.**

Nos. 243, 1994, 244, 1994, 504, 1994 and 505, 1994.

Supreme Court of Delaware.

Submitted: July 6, 1995.
Decided: Sept. 20, 1995.
Revised: Sept. 21, 1995.
Revised: Oct. 6, 1995.

Robert K. Payson (argued), James F. Burnett and Stephen C. Norman, Potter Anderson & Corroon, Wilmington, for El Paso Natural Gas Company, Richard M. Bressler, Travis H. Petty and William A. Wise.

Lawrence C. Ashby (argued), Stephen E. Jenkins, Philip Trainer, Jr. and Amy Arnott Quinlan, Ashby & Geddes, Wilmington, for TransAmerican Natural Gas Company.

A. Gilchrist Sparks, III and Kenneth J. Nachbar, Morris Nichols Arsht & Tunnell, Wilmington, for El Paso Production Company, Meridian Oil Inc., Burlington Northern, Inc. and Burlington Resources, Inc.

Richard R. Wier, Jr., Wilmington, for TransAmerican Natural Gas Corporation.

Before WALSH, HOLLAND and HARTNETT, JJ.

HARTNETT, Justice.

In this appeal we find that the Court of Chancery does not have jurisdiction over this controversy because of the existence of an adequate remedy at law. The ruling of the Court of Chancery dismissing the suit is, therefore, affirmed.

## I.

This lawsuit arises from a dispute over a December 24, 1989 settlement between Plaintiffs, Appellants, El Paso Natural Gas Company and El Paso Production Company (collectively, "El Paso") and Defendant, Appellee, TransAmerican Natural Gas Corporation ("TransAmerican").

El Paso (a Delaware corporation with its principal place of business in El Paso, Texas) is in the business of gathering and transporting natural gas through pipelines located throughout the United States. TransAmerican (a Texas corporation with its principal place of business in Houston, Texas) is engaged in the production and sale of natural gas in Texas and other states.

During the 1970's and 1980's, El Paso and its affiliates entered into gas purchase and other agreements with TransAmerican's predecessors. Disputes arose as to the parties' respective rights and obligations, and these disputes resulted in litigation. In 1988, a Texas court entered a judgment of $480 million against El Paso in favor of TransAmerican.

During the pendency of the appeal of that judgment, the parties reached a settlement in which they agreed, *inter alia:* to, (1) terminate all pending litigation; (2) terminate the operating agreements that had been the subject of the litigation; (3) enter into new operative agreements; and (4) release all claims against each other. As part of that settlement, El Paso transferred to TransAmerican cash and assets valued at more than $437 million. Additionally, the parties executed a December 24, 1989 settlement document ("Settlement Agreement"), which contained a forum selection clause that provided: "All actions to enforce or seek damages, specific performance or other remedy for the alleged breach of this agreement or the operative agreements shall be brought in the Chancery Court of the State of Delaware."

On November 5, 1993, TransAmerican initiated a lawsuit in Texas against El Paso and others. The suit alleged that El Paso had created an "unlawful scheme to place TransAmerican under extreme financial difficulty in order to procure the December 24, 1989 agreement, prevent TransAmerican's reorganization in bankruptcy, obtain ownership of TransAmerican's outstanding debt, obtain certain TransAmerican mineral rights, and acquire certain litigation claims against TransAmerican." In its Texas complaint, TransAmerican asserted six causes of action: (1) fraud, fraudulent inducement and fraudulent concealment in connection with the execution of the Settlement Agreement;

(2) tortious interference with existing and prospective business relationships; (3) economic duress and coercion that allegedly caused TransAmerican to enter into the Settlement Agreement; (4) breach of the Settlement Agreement; (5) civil conspiracy among various defendants; and (6) violation of the Texas Anti–Trust Act. TransAmerican initially prayed for compensatory and punitive damages as well as a declaratory judgment and a permanent injunction requiring the defendants to cease their unlawful conduct. The prayer for an injunction was later withdrawn.

■ On December 3, 1993, El Paso brought suit in the Delaware Court of Chancery in response to TransAmerican's filing of the Texas action.[1] In the Delaware action, El Paso alleges that it is entitled to an injunction to prevent the irreparable harm it will suffer if it is forced to litigate claims relating to the Settlement Agreement in Texas rather than in the Delaware Court of Chancery. El Paso seeks: (1) specific performance of the forum selection clause in the Settlement Agreement through the issuance of an injunction restraining TransAmerican from litigating its claims in any forum other than the Delaware Court of Chancery; (2) a declaratory judgment that the Settlement Agreement is valid and enforceable and that El Paso has not breached it; and (3) monetary damages for injuries allegedly sustained as a result of TransAmerican bringing the Texas action.

## II.

The Court of Chancery dismissed this action after concluding, *inter alia,* that the lawsuit fell outside the limited equitable jurisdiction of that court because El Paso had

---

1. Although the parties did not raise the issue, El Paso requested injunctive relief in Delaware to prevent the suit already filed in Texas from proceeding. We note that while it is sometimes permissible to entertain an action although a lawsuit on the same claim is pending elsewhere, Delaware courts generally grant a stay of the second action pending the outcome of the first, particularly where complete relief can be had in the first-filed action. *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng. Co.*, Del.Supr., 263 A.2d 281, 283 (1970); *Chrysler First Business Credit Corporation and Chrysler Financial Corporation v. 1500 Locust Limited Partnership*, Del.Supr., 669 A.2d 104, Berger, J. (1995). *See* Restatement (Second) of Conflicts 86, Comment B (1971).

an adequate remedy at law.[2] Because the Court of Chancery did not otherwise have jurisdiction over the controversy, it also did not have jurisdiction to consider the prayer for a declaratory judgment. *City of Wilmington v. Delaware Coach Co.*, Del.Ch., 230 A.2d 762, 766 (1967).

El Paso appealed the Court of Chancery's ruling and also sought to amend its complaint in the Court of Chancery to cure the alleged jurisdictional defect. We stayed the appeal and remanded the case to the Court of Chancery for a ruling on El Paso's motion to amend the complaint. The Chancery Court then held that El Paso's new factual allegations were not materially different from the initial allegations and that they still did not properly state a claim for equitable relief. It therefore dismissed the amended complaint and this appeal went forward.[3]

### III.

■ The Delaware Court of Chancery is a courty of equity. It has only that limited jurisdiction that the Court of Chancery in England possessed at the time of the American Revolution, or such jurisdiction as has been conferred upon it by the Delaware General Assembly. *duPont v. duPont*, Del. Supr., 85 A.2d 724, 729–30 (1951). It does not have jurisdiction over a controversy unless the plaintiff lacks an adequate remedy at law. *Glanding v. Industrial Trust Co.*, Del. Supr., 45 A.2d 553, 559 (1945); *Tull v. Turek*, Del.Ch., 147 A.2d 658, 664 (1958); 10 Del.C. § 342.

■ "It is a cardinal principle of the law that jurisdiction of a court over the subject matter cannot be conferred by consent or agreement." *Timmons v. Cropper*, Del.Ch., 172 A.2d 757, 760 (1961) (citations omitted). "Jurisdiction over a party or subject matter, or venue of a cause, can not be determined by private bargaining where there is no other basis for such jurisdiction or venue." *Elia Corp. v. Paul N. Howard Co.*, Del.Super., 391 A.2d 214, 215–16 (1978) (citing *Central Con-*

*tracting Co. v. C.E. Youngdahl & Co.*, 418 Pa. 122, 209 A.2d 810 (1963)).

■ Wholly disregarding this longstanding precept, El Paso asserts that parties can contract for jurisdiction in the Delaware Court of Chancery. El Paso first asserts that the forum selection clause was created by sophisticated parties who, contemplating future litigation, expressly bargained for the right to litigate all future disputes in the Delaware Court of Chancery. In addition, El Paso argues that the choice of the Chancery Court offered important benefits, such as avoidance of a potential jury trial or punitive damages, and that these benefits significantly affected the amount of consideration it paid in settling the initial dispute. These arguments simply miss the point; neither the Court of Chancery nor the parties to a dispute can confer equitable jurisdiction where it is otherwise lacking. *Id.*

### IV.

■ Although equity operates only in the absence of an adequate remedy elsewhere, "... the mere fact that a litigant may have a remedy at law does not divest Chancery of its jurisdiction. 'The basic jurisdictional fact upon which equity operates is the absence of an adequate remedy in the law courts.' The question is whether the remedy available at law will afford the plaintiff full, fair, and complete relief." *Hughes Tool Co. v. Fawcett Publications, Inc.*, Del.Supr., 315 A.2d 577, 579 (1974) (internal citations omitted).

■ "A remedy at law must be as practical to the ends of justice and to its prompt administration as the remedy in equity." *Elster v. American Airlines*, Del.Ch., 100 A.2d 219, 226 (1953) (citations omitted); *see also Family Court v. Department of Labor and Indus. Relations*, Del.Ch., 320 A.2d 777, 780 (1974). The Court of Chancery, therefore, may exercise jurisdiction over an action in which an injunction is sought to prevent a threatened injury where "the remedy at law, if there should be one, would undoubtedly be

---

**2.** *El Paso Natural Gas Company v. Trans–American Natural Gas Corporation*, Del.Ch., C.A. No. 13,278–NC, Berger, V.C. [1994 WL 698618] (May 31, 1994).

**3.** *El Paso National Gas Company v. Trans–American Natural Gas Corporation*, Del.Ch., C.A. No. 13,278–NC, Balick, V.C. (Dec. 2, 1994).

less complete and less effective than in a court of equity." *Id.*

■■■ The Court of Chancery correctly determined, *inter alia,* that El Paso could raise the forum selection clause in the Settlement Agreement as a defense in the first filed Texas action and, if successful, recover the costs of that litigation. It further held that the ability to raise the forum selection claim as a defense in the Texas action was an adequate remedy at law. We agree. "Where there is a defense cognizable at law the possessor of it has an adequate remedy at law and equity will not enjoin his adversary from suing." *Gray Co. v. Alemite Corp.,* Del.Ch., 174 A. 136, 144 (1934) (citing *Pefkaros v. Harman, et al.,* Del.Ch., 174 A. 124 (1934)). "In such case there is no occasion for equity's interference." *Id.*

## V.

El Paso advances numerous reasons why the Texas litigation cannot offer it a remedy that would be adequate or as practical to the ends of justice as the equitable relief it seeks in Delaware. These arguments are not persuasive.

■■■ El Paso correctly states that a legal remedy may be inadequate where a party's injury from breach of contract is either non-compensable or cannot be valued with reasonable certainty. *Cf. Chavin v. H.H. Rosin & Co.,* Del.Supr., 246 A.2d 921, 922 (1968). El Paso fails, however, to delineate how any such injury is likely to occur to it from the present litigation. Although El Paso states that it cannot be readily compensated for the costs it will incur in the Texas action, such costs are incident to protracted litigation regardless of where it takes place. And El Paso does not assert that TransAmerican will be unable to pay any judgment for costs that may be entered against it.

Similarly, El Paso contends that it will incur a noncompensable injury for each day of litigation in Texas, because both parties bargained for the "right" to litigate any dispute before the Delaware Court of Chancery. That argument, however, rests upon the faulty premise that jurisdiction in the Delaware Court of Chancery is a right that could be created by contract. As discussed previously, jurisdiction of the Chancery Court cannot be created by contract or agreement. *Timmons,* 172 A.2d at 760. Consequently, there is no right that could have been lost and there is no basis for El Paso's claim for compensation for the non-existent loss.

El Paso next argues that it may not be able to raise the forum-based defense in the Texas litigation because TransAmerican could force consideration of numerous other legal issues before the forum selection clause issue is addressed. El Paso, however, offers no reason why the Texas court cannot early in the litigation determine whether it has jurisdiction over TransAmerican's action, nor can we presume that the Texas court will not do so. *Cf. Draper v. Gardner Defined Plan Trust,* Del.Supr., 625 A.2d 859, 867 (1993).

El Paso also contends that it will be denied an adequate remedy should its forum-based defense be met with the argument in Texas that the Delaware court has already determined that it does not have jurisdiction over the dispute. El Paso asserts that it would then be placed in the "untenable and paradoxical" position of having to ask that the case be sent back to the Delaware Court of Chancery. This argument is also unpersuasive. Should El Paso succeed in convincing the Texas court that the Delaware Court of Chancery is the only proper forum for the dispute, El Paso will gain the very result it seeks: TransAmerican would be barred from pursuing its claims in Texas.

Similarly, we are unpersuaded by El Paso's allegation that its legal remedy is not adequate because both parties stipulated to equitable remedies in the event of a breach. El Paso relies upon the language of the Settlement Agreement, that provides: "All actions to enforce or seek damages, specific performance or other remedy for the alleged breach of this agreement or the operative agreements shall be brought in the Chancery Court of the State of Delaware." TransAmerican, however, in the Texas action, attacks the Settlement Agreement itself. Although the Settlement Agreement purportedly expresses the desire of the parties to utilize equitable remedies in the event of breach, this language cannot preclude a

valid challenge to the validity of the agreement. TransAmerican correctly points out that several of the allegations in its first-filed Texas action assert that the Settlement Agreement was the result of a fraudulent inducement. If these allegations are true, the Settlement Agreement will be a nullity and its component part, the forum selection clause, will likewise be a nullity.

Likewise, we are not persuaded by El Paso's argument that courts sometimes give credence to agreements stipulating to the granting of equitable relief. Even assuming the validity of the Settlement Agreement, as previously discussed, jurisdiction cannot be conferred on the Court of Chancery by contract or agreement. *Timmons,* 172 A.2d at 760.

While El Paso may consider its right to assert the forum-based legal defense in Texas to be less desirable than asserting a claim for injunctive relief in Delaware, this does not render the legal remedy in Texas inadequate. "The issue for the Equity Court is not whether another remedy would be preferable to the plaintiffs, but whether the remedy at law will provide a full, adequate and complete remedy to the plaintiffs." *Chateau Apartments Co. v. City of Wilmington,* Del.Supr., 391 A.2d 205, 207 (1978). Not only is the Texas court perfectly capable of ruling upon El Paso's forum-based defense, it is also able to adjudicate the various legal claims concerning the validity of the Settlement Agreement, an issue that was not before the Court of Chancery.

We therefore AFFIRM the Judgment of the Court of Chancery dismissing this lawsuit.