# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VILLAGE GREEN HOLDING, LLC, CCI HISTORIC, INC. and VG ECU HOLDINGS LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2018-0631-TMR |
| JONATHAN HOLTZMAN, VILLAGE GREEN RESIDENTIAL PROPERTIES, LLC, and VGM CLEARING, LLC, formerly known as VILLAGE GREEN MANAGEMENT CLEARING COMPANY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 25, 2017
Date Decided: October 5, 2018

Richard P. Rollo, Anthony M. Calvano, and Courtney A. Carvill, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Alan S. Loewinsohn and Kerry Schonwald, LOEWINSOHN FLEGLE DEARY SIMON LLP, Dallas, Texas; *Attorneys for Plaintiffs.*

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, Delaware; Marc L. Newman, THE MILLER LAW FIRM, P.C., Rochester, Michigan; *Attorneys for Defendants.*

**MONTGOMERY-REEVES, Vice Chancellor.**

Pending before me is Plaintiffs Village Green Holding, LLC ("Village Green Holding"), CCI Historic, Inc. ("CCI"), and VG ECU Holdings, LLC's ("VG ECU") (collectively, "Plaintiffs") Motion for Interim Injunctive Relief, which I will treat as a motion for a preliminary injunction. Plaintiffs' motion requests that this Court enter a preliminary injunction against Defendants Jonathon Holtzman ("Holtzman"), Village Green Residential Properties LLC ("VGRP"), and VGM Clearing, LLC, formerly known as Village Green Management Clearing Company ("VGM Clearing") (collectively, "Defendants") in relation to VGRP's motion seeking to modify the sale order (the "Sale Order Motion"[1]) in the Court of Common Pleas of Allegheny County, Pennsylvania, No. GD-17-006216 (the "Pennsylvania Action"). Plaintiffs seek an injunction to (1) prohibit Defendants from taking any action to further pursue the Sale Order Motion, (2) prohibit Defendants from filing a new action in Pennsylvania as VGRP declares it intends to do in the Sale Order Motion[2] (the "New Pennsylvania Action"), and (3) direct Defendants to withdraw the Sale Order Motion without prejudice. Because the parties have contracted for exclusive forum-selection clauses requiring these claims be litigated in the Delaware State

---

[1] Compl. Ex. E.

[2] *Id.* Ex. 2, at 2.

2

Courts or the Federal District Court for the District of Delaware, I grant the motion and (1) prohibit VGRP from taking any action to further pursue the Sale Order Motion, (2) prohibit VGRP from filing the New Pennsylvania Action, and (3) mandate that VGRP withdraw the Sale Order Motion. I mean no disrespect to my sister court in Pennsylvania by ruling that Plaintiff may not bring its claims there. This decision simply enforces the parties' contractual exclusive forum-selection agreement as I am required to do under Delaware Supreme Court authority.

## I.    BACKGROUND

Plaintiffs and Defendants are in the middle of a messy business divorce. In 2011, CCI invested as a fifty-percent owner in the Village Green family of companies.[3] The Holtzman family previously owned the Village Green family of companies and used the companies to develop and manage multifamily housing.[4] By 2016, the relationship between the parties had deteriorated, and on February 1, 2016, they signed a redemption agreement (the "Redemption Agreement") to effectuate a separation.[5] Under the Redemption Agreement, Holtzman received the option to acquire corporate entities that controlled two then-unfinished properties,

---

[3]    Master Consol. and Am. Verified Compl. 11, *In re Morrow Park Hldg.*, C.A. No. 2017-0036-TMR (consol.) (Del. Ch. May 2, 2018) (the "Master Complaint").

[4]    *Id.* at 3.

[5]    *Id.* at 11.

3

Morrow Park and Southside Works, upon the fulfillment of certain conditions related to the two properties' construction and occupancy.[6] The current litigations stem from a dispute over some of those conditions.

The structure of the business organization that CCI and Holtzman created under the Redemption Agreement is a central feature of this case. Morrow Park City Apartments, a 213-unit apartment building located at 5250 Liberty Avenue, Pittsburgh, Pennsylvania (the "Apartments" or "Property") is 100% owned by Morrow Park City Apartments, LLC ("MP Operating").[7] MP Operating is majority owned and managed by VG Morrow Park Capital LLC ("MP Managing") and minority owned by non-managing investor L.A.V. Associates, LP ("L.A.V.").[8] MP Managing is majority owned and managed by Morrow Park Holding, LLC ("MP Holding") and minority owned by Compatriot Capital, Inc. ("Compatriot"), the 100% owner of CCI.[9] MP Holding is co-managed and equally owned by CCI and VGRP, with VG ECU as a minority non-managing investor.[10]

---

[6] *Id.* at 3-4.

[7] Opp'n to Mot. to Refund the Cash and Mot. to Increase the Inj. Bond 9, *In re Morrow Park Hldg.*, C.A. No. 2017-0036-TMR (consol.) (Del. Ch. Mar. 28, 2018).

[8] *Id.*

[9] *Id.*

[10] Master Compl. 8.

4



The Redemption Agreement covers the broad relationship between the companies associated with Holtzman, on the one hand, and the companies associated with Compatriot, on the other, and represents the divorce agreement as a whole.[11] The MP Holding Operating Agreement, signed on May 27, 2016 (the "Operating Agreement"), specifically controls the parties' responsibilities with respect to MP Holding.

---

[11]     Compl. Ex. 1 § 15.17, *In re Morrow Park Hldg.*, C.A. No. 2017-0036-TMR (consol.) (Del. Ch. Jan. 17, 2017).

The focus of the dispute here centers around the process to buy or sell interests in certain corporate entities. Section 1.1(a)(iv)(2) of the Redemption Agreement lays out the rights of the Holtzman companies to purchase CCI's membership interests in MP Holding and MP Managing upon the fulfillment of construction and occupancy conditions and, if the Holtzman companies do not exercise their rights, CCI's right to purchase the Holtzman companies' interests in MP Holding and MP Managing. Section 10.10 of the Operating Agreement lays out VGRP's right to (1) purchase CCI's interest in MP Holding, (2) purchase Compatriot's interest in MP Managing, and (3) provide cash to MP Holding which MP Holding will use to repurchase Executive Common Units from VG ECU, also upon conditions related to the construction and occupancy of the Apartments.[12] The terms of the Operating Agreement give VGRP a specific amount of time to make those purchases, and in the event that VGRP does not exercise that right, CCI then may buy out VGRP's interests in the entities in the same way for its own specified period of time.[13]

Both agreements have exclusive forum-selection clauses in favor of Delaware courts. The Redemption Agreement says that each party

> HEREBY CONSENTS TO THE JURISDICTION OF ANY UNITED STATES DISTRICT COURT OR DELAWARE STATE COURT LOCATED IN

---

[12]    *Id.* Ex. 1 § 10.10(b); Compl. 2.

[13]    Compl. 3.

6

WILMINGTON, DELAWARE, AND IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER SUCH ACTIONS OR PROCEEDINGS ARE BASED IN STATUTE, TORT, CONTRACT OR OTHERWISE), SHALL BE LITIGATED IN SUCH COURTS. EACH PARTY . . . AGREES THAT IT WILL NOT BRING ANY SUCH ACTION OR PROCEEDING IN ANY COURT OTHER THAN SUCH COURTS. EACH PARTY ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE EXCLUSIVE AND IRREVOCABLE JURISIDICTION AND VENUE OF THE AFORESAID COURTS.[14]

The Operating Agreement says that each party

HEREBY CONSENTS TO THE JURISDICTION OF ANY UNITED STATES DISTRICT COURT OR DELAWARE STATE CHANCERY COURT LOCATED IN WILMINGTON, DELAWARE AND IRRECOVABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER SUCH ACTIONS OR PROCEEDINGS ARE BASED IN STATUTE, TORT, CONTRACT OR OTHERWISE), SHALL BE LITIGATED IN SUCH COURTS. EACH PARTY . . . AGREES THAT IT WILL NOT BRING ANY SUCH ACTION OR PROCEEDING IN ANY COURT OTHER THAN SUCH COURTS. EACH

---

[14] Compl. Ex. 2 § 11.13, *In re Morrow Park Hldg.*, C.A. No. 2017-0036-TMR (consol.) (Del. Ch. Jan. 17, 2017).

PARTY ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE EXCLUSIVE AND IRREVOCABLE JURISDICTION AND VENUE OF THE AFORESAID COURTS.[15]

## II. THE LITIGATIONS

VGRP filed the first lawsuit in this Court on January 17, 2017, against CCI, Compatriot, and VG ECU (the "First Delaware Action").[16] The dispute centered on the valuation of the Apartments and arose out of a disagreement over the appraisal procedures required under the Operating Agreement.[17] The parties were to use that appraisal to value MP Holding and MP Managing, the companies whose interests the parties were to buy and sell. The parties do not dispute that the Apartments met the construction and occupancy conditions for a potential sale on September 23, 2016.[18] VGRP notified CCI of its intent to purchase effective November 22, 2016; the terms of the Operating Agreement required the sale to close no later than January 23, 2017.[19]

---

[15] *Id.* Ex. 1 § 15.17.

[16] Compl. 1-2.

[17] Master Compl. 15.

[18] *Id.* at 16.

[19] *Id.* at 17.

This dispute over the appraisal, however, was delaying the sale, and VGRP was at risk of running out of time on its purchase option, as well as losing its financing commitment.[20] VGRP initially sought an injunction to compel CCI to close on the deal.[21] This Court denied that injunction but granted an order (the "Status Quo Order") (1) preventing either party from exercising its rights to purchase the other party's interests under the Operating Agreement until thirty calendar days after the appraisal dispute was adjudicated and (2) maintaining the status quo.[22] The Status Quo Order also (1) prevents either party from transferring its rights without the consent of the other party, (2) prevents the rights of either party under the Operating Agreement from expiring during the pendency of the case, and (3) requires VGRP to post a stipulated $2,000,000 bond as security pursuant to Rule 65(c) of the Rules of the Court of Chancery of the State of Delaware.[23]

What began as a narrow dispute over appraisal procedures expanded into a major legal battle. As a result of the dispute, MP Operating became dysfunctional,

---

[20]    *Id.* at 29.

[21]    Mot. for TRO, *In re Morrow Park Hldg.*, C.A. No. 2017-0036-TMR (consol.) (Del. Ch. Jan. 17, 2017).

[22]    Order Granting Inj. (Modified), *In re Morrow Park Hldg.*, C.A. No. 2017-0036-TMR (consol.) (Del. Ch. Jan. 20, 2017)

[23]    *Id.*

leading L.A.V. to file the Pennsylvania Action.[24]  The Pennsylvania Action sought dissolution of MP Operating and has resulted in a court-ordered sale of the Property.[25]

The Pennsylvania court's sale procedures explicitly allow for both parties to bid on the Property, and both parties have done so.[26]  The parties have also made offers for each other's interests in the various corporate entities.[27]  On July 13, 2018, City Club Apartments, LLC ("CCA"), a Holtzman company, offered $58.5 million for the Property.[28] On July 27, 2018, Compatriot offered $58.75 million for the Property in fee simple, or alternatively upon consent of the parties required by the Status Quo Order, Holtzman's interests in MP Holding.[29]  On August 3, 2018, CCA offered $58.5 million for the property in fee simple, or alternatively a buyout of CCI's membership interests in MP Operating, in which case the price would be

---

[24]     Compl. Ex. E Ex. 2, at 6.

[25]     *Id.*

[26]     Defs.' Resp. in Opp. to Mot. for Interim Injunctive Relief 7-8.

[27]     *Id.*

[28]     Compl. Ex. E Ex. 8.

[29]     *Id.* Ex. 10, Attach. 2.

based on a value of $60 million for the Property.[30]  The Pennsylvania sale process is ongoing.[31]

VGRP filed the Sale Order Motion and announced its intention to file the New Pennsylvania Action.  VGRP seeks modification of the Pennsylvania court's sale procedures such that the procedures give VGRP a priority purchase right in the Pennsylvania court-ordered sale, as VGRP says it is entitled to under the Operating Agreement.[32]  In response, Plaintiffs filed this action seeking to (1) prohibit Defendants from taking any action to further pursue the Sale Order Motion, (2) prohibit Defendants from filing a new action in Pennsylvania as VGRP declares it intends to do, and (3) direct Defendants to withdraw the Sale Order Motion without prejudice.

## III.   ANALYSIS

### A.    The Standard for Injunctive Relief

Plaintiffs seek a preliminary injunction to prevent Defendants "from (i) taking any action to further pursue the [Sale Order Motion], and (ii) filing the New

---

[30]     *Id.* Ex. 9.

[31]     Plaintiff CCI claims that VGRP violated the Status Quo Order through its August 3 offer, which unlike CCI's July 27 offer was not conditioned on consent.  Because VGRP's offer was for MP Operating, which is not covered by the Status Quo Order, VGRP's offer did not violate the Status Quo Order.

[32]     Compl. Ex. E Ex. 2, at 1-2.

11

Pennsylvania Action, until after this Court renders a decision concerning the final injunctive relief sought in the Complaint."[33]

This Court has broad discretion in granting or denying a preliminary injunction.[34] "A preliminary injunction may be granted where the movants demonstrate: (1) a reasonable probability of success on the merits at a final hearing; (2) an imminent threat of irreparable injury; and (3) a balance of the equities that tips in favor of issuance of the requested relief."[35] "The moving party bears a considerable burden in establishing each of these necessary elements. Plaintiffs may not merely show that a dispute exists and that plaintiffs might be injured; rather, plaintiffs must establish clearly each element because injunctive relief 'will never be granted unless earned.'"[36] Yet, "there is no steadfast formula for the relative weight each deserves. Accordingly, a strong demonstration as to one element may serve to overcome a marginal demonstration of another."[37]

---

[33] Compl. 9.

[34] *Data Gen. Corp. v. Dig. Comput. Controls, Inc.*, 297 A.2d 437, 439 (Del. 1972) (citing *Richard Paul, Inc. v. Union Improvement Co.*, 91 A.2d 49 (Del. 1952)).

[35] *Nutzz.com, LLC v. Vertrue, Inc.*, 2005 WL 1653974, at *6 (Del. Ch. July 6, 2005).

[36] *La. Mun. Police Emps.' Ret. Sys. v. Crawford*, 918 A.2d 1172, 1185 (Del. Ch. 2007) (citing *Lenehan v. Nat'l Comput. Analysts Corp.*, 310 A.2d 661, 664 (Del. Ch. 1973)).

[37] *Alpha Builders, Inc.*, 2004 WL 2694917, at *3 (citing *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 579 (Del. Ch. 1998)).

12

Timing also plays a role when courts consider injunctions that prohibit litigation in other states:

> Another consideration, perhaps related to the irreparable-harm inquiry, that often factors into the Court of Chancery's analysis with regard to motions to enjoin the filing or prosecution of actions in the courts of other states is whether a later-filed action is actually pending as opposed to being merely threatened. The mere prospect of being harassed and vexed by possible future litigation ordinarily is not deemed sufficient to warrant injunctive relief. Thus, absent the existence of a second suit, a movant must demonstrate clearly that the threat of future suits is real and imminent. The Court of Chancery will not enter an injunction merely because a party fears that a lawsuit relating to the same controversy might be filed against it in another forum. However, where the threat of a later-filed action involving the same controversy is sufficiently concrete and other equitable considerations warrant relief, the Court of Chancery will enjoin a party from commencing suit in a foreign jurisdiction.[38]

Plaintiffs also seek an injunction to require Defendants to "withdraw the [Sale Order Motion], without prejudice, to ensure that further proceedings do not occur until after this Court renders a decision concerning the injunctive relief sought in this action."[39]

---

[38]  *See Monsanto Co. v. Aetna Cas. & Sur. Co.*, 1992 WL 212516 (Del. Ch. July 29, 1992) (sitting by designation); *Air Prods. & Chems., Inc. v. Lummus Co.*, 235 A.2d 274 (Del. Ch. 1967); *Gray Co., Inc. v. Alemite Corp.*, 174 A. 136, 143 (Del. Ch. 1934); Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 5.03 (2018) (some citations omitted).

[39]  Compl. 10. During the Friday, September 21, 2018 hearing, Plaintiffs and Defendants discussed an email Defendants had sent possibly withdrawing the Sale

To prevail on a motion for a mandatory injunction, Petitioners must satisfy a modified version of the three prong test generally applicable to injunctions. First, Petitioners must establish, based on the undisputed facts, that they are entitled to judgment as a matter of law on the merits of their claim. Second, Petitioners must demonstrate that they will suffer future irreparable injury if the Court does not grant the requested relief. Third, the Court must balance the equities involved. That is, Petitioners must establish that the potential harm they will suffer in the future if the Court refuses to enjoin Respondents outweighs the potential harm to the interests that Respondents seek to protect (*i.e.,* potential harm to children in the care of Petitioners).[40]

When parties seek injunctions to enforce something other than the status quo, or "[s]pecifically, where application for a TRO effectively becomes a form of mandatory relief, a plaintiff 'must clearly establish the legal right he seeks to protect or the duty he seeks to enforce' and, where application for the TRO serves as a final resolution of the matter, the plaintiff must show that the material facts are not in substantial dispute."[41]

---

Order Motion. Because there was no stipulation or representation regarding whether Defendants withdrew the Sale Order Motion, I must rule on the matter.

[40] *Joyland Daycare Ctr. v. Dir. of Dep't of Servs. for Children, Youth and Their Families*, 1996 WL 74713, at *2 (citing *Gimbel v. Signal Cos.*, 316 A.2d 599, 602-03 (Del. Ch. 1974)).

[41] *Arkema Inc. v. Dow Chem. Co.*, 2010 WL 2334386, at *3 (Del. Ch. May 25, 2010) (citing *Stahl v. Apple Bancorp, Inc.*, 579 A.2d 1115, 1120 (Del. Ch. 1990)).

14

**B.     Success on the Merits**

As to the first element, Plaintiffs point to their right under the Delaware exclusive forum-selection clauses to have any claim based on the Operating Agreement and/or Redemption Agreement brought in Delaware.[42]  The forum-selection clauses both require that all actions arising out of or related to the respective agreements be litigated exclusively in the United States District Court for the District of Delaware or either any Delaware State Court (for the Redemption Agreement) or the Delaware Court of Chancery (for the Operating Agreement).[43]

Delaware law favors the enforcement of forum-selection clauses.  In *Ingres Corp. v. CA, Inc.*, the Delaware Supreme Court held that "in cases where a contract identifies Delaware as the chosen forum in a legally enforceable forum selection clause. . . . a court should honor the parties' contract and enforce the clause."[44]  The Supreme Court added that "[f]orum selection [ ] clauses are 'presumptively valid' and should be 'specifically' enforced unless the resisting party '[ ] clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid

---

[42]     Compl. 4-6.

[43]     Compl. Ex. 1 § 15.17, *In re Morrow Park Hldg.*, C.A. No. 2017-0036-TMR (consol.) (Del. Ch. Jan. 17, 2017).

[44]     8 A.3d 1143, 1145 (Del. 2010).

for such reasons as fraud or overreaching.'"[45]   The Supreme Court affirmed that

holding in *National Industrial Group (Holding) v. Carlyle Investment Management*,

ruling that "[a] valid forum selection clause *must* be enforced."[46]

Defendants make three arguments about why Plaintiffs are unlikely to succeed

on the merits: (1) the forum-selection clause is inapplicable and invalid under *El

Paso Natural Gas Co. v. TransAmerican Natural Gas Corp.*;[47] (2) the MP Operating

forum-selection clause—which designates Pennsylvania—should apply;[48] and (3)

---

[45]   *Ingres*, 8 A.3d at 1146 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) (all but first alterations in original) (some citations omitted)); *see also id.* at 1146 n.9 (citing *Capital Grp. Cos. v. Armour,* 2004 WL 2521295, at *3 (Del. Ch. Nov. 3, 2004); *M/S Bremen,* 407 U.S. at 15 ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."); *HealthTrio, Inc. v. Margules*, 2007 WL 544156, at *3 (Del. Super. Jan. 16, 2007) ("Mere inconvenience or additional expense is not the test of unreasonableness.  In light of present day commercial realities, a forum clause should control absent a strong showing that it should be set aside."); *Elia Corp. v. Howard Corp.*, 391 A.2d 214, 216 (Del. Super. 1978) ("Such an agreement is unreasonable only when its enforcement would, under the circumstances then existing, seriously impair the plaintiff's ability to pursue his cause of action."); *Cent. Contracting Co. v. Md. Cas. Co.*, 367 F.2d 341, 345 (3d Cir. 1966) ("[I]t should be respected as the responsible expression of the intention of the parties so long as there is no proof that its provisions will put one of the parties to an unreasonable disadvantage and thereby subvert the interests of justice.")).

[46]   67 A.3d 373, 381 (Del. 2013) (emphasis added) (citation omitted).

[47]   669 A.2d 36 (Del. 1995).

[48]   Defs.' Resp. in Opp. to Mot. for Interim Injunctive Relief 15-16.

16

Defendants had to bring the Sale Order Motion in Pennsylvania to preserve their rights.

First, in *El Paso*, the Court of Chancery dismissed Plaintiff El Paso's claims that the Court should enjoin Defendant TransAmerican from litigating its claims outside of the Delaware Court of Chancery based on the parties' contractual exclusive Delaware forum-selection clause, holding that the Court had no basis for jurisdiction and that a contract could not create that basis.[49]  The Delaware Supreme Court affirmed, explaining that Plaintiff's core mistake "rest[ed] upon the faulty premise that jurisdiction in the Delaware Court of Chancery is a right that could be created by contract."[50]  The Court of Chancery could not hear the case "[b]ecause El Paso had no power to confer exclusive jurisdiction over all disputes, including purely legal ones, on the Court of Chancery" as the clause at issue purported to do.[51]  The *El Paso* exclusive forum-selection clause failed because it was "facially invalid. . . . El Paso had no basis to argue that it was suffering an irreparable injury . . . because the rights it sought to enforce never legally existed."[52]

---

[49]     *El Paso*, 669 A.2d at 38-39.

[50]     *Carlyle*, 67 A.3d at 382 (citing *El Paso*, 669 A.2d at 40).

[51]     *Id.*

[52]     *Id.*

*El Paso* is inapplicable here. The forum-selection clauses at issue do not purport to confer exclusive jurisdiction over all claims, including purely legal ones, on the Court of Chancery. Furthermore, a basis for jurisdiction in this Court exists through the statutory delegation in Section 18-111 of the Limited Liability Company Act ("Section 18-111").

Section 18-111 grants the Court of Chancery subject matter jurisdiction over

> [a]ny action to interpret, apply or enforce the provisions of a limited liability company agreement, or the duties, obligations or liabilities of a limited liability company to the members or managers of the limited liability company, or the duties, obligations or liabilities among members or managers and of members or managers to the limited liability company, or the rights or powers of, or restrictions on, the limited liability company, members or managers, or any provision of this chapter, or any other instrument, document, agreement or certificate contemplated by any provision of this chapter, may be brought in the Court of Chancery.[53]

Interpretation of rights and obligations under an operating agreement falls under the plain language of Section 18-111. The focus of this case is on the rights of members under Section 10.10 of the Operating Agreement. Additionally, in this case, as in *Duff v. Innovative Discovery LLC*, this Court has subject matter jurisdiction on the basis that it must interpret the Redemption Agreement, which, as an agreement among LLC members, is contemplated under the Limited Liability

---

[53]     6 *Del. C.* § 18-111.

Company Act and subject to this Court's jurisdiction.[54] Thus, VGRP's *El Paso* argument fails.

Second, Defendants argue that a different forum-selection clause should apply. Defendants point out that MP Operating's "Operating Agreement provides that the appropriate forum for disputes between [MP Operating] and its members is Pennsylvania."[55] Defendants' argument refers to the wrong corporate entity. This case deals with MP Holding's Operating Agreement, which specifies the Delaware Court of Chancery or the United States District Court for the District of Delaware as the appropriate forum. Who purchases the Property in the Pennsylvania Action is entirely distinct from who buys the membership interests in MP Holding and MP Managing as a result of the Delaware Action. The parties are not free to pursue their claims under the MP Holding Operating Agreement in the Pennsylvania Action.

Third and finally, Defendants argue that they have no choice but to bring the Sale Order Motion in Pennsylvania because the bidding there is ongoing and to do anything else is to forfeit their rights under the Operating Agreement. Again, Defendants miss the mark. The two sale processes involve separate entities and separate property interests. The outcome of one sale has no impact on the other, and

---

[54]    2012 WL 6096586 (Del. Ch. Dec. 7, 2012).

[55]    Defs.' Resp. in Opp. to Mot. for Interim Injunctive Relief 15-16.

19

Defendants' consternation that they might not succeed in purchasing the Apartments in the Pennsylvania Action does not allow them to seek interpretation of their rights under the MP Holding Operating Agreement in the Pennsylvania Action.

The forum-selection clause in question is presumptively valid, and Delaware Courts strongly support enforcement of forum-selection clauses. Defendants have not shown that enforcement would be unreasonable or unjust. Defendants have not shown any fraud or overreach. Plaintiffs have clearly established the legal rights they seek to protect, and the material facts of the forum-selection clause are not in substantial dispute.

### C. Imminent Threat of Irreparable Injury

Plaintiffs argue that violation of a valid exclusive forum-selection provision is per se irreparable harm because it is a right bargained for by contract.[56] "Under binding Delaware Supreme Court precedent, a party suffers irreparable harm when forced to litigate in a jurisdiction other than the one selected by a valid forum-selection clause."[57] "This Court consistently has held that the procession of a claim

---

[56]   Pls.' Mot. for Interim Injunctive Relief 6-8.

[57]   *BE & K Eng'g Co., LLC v. RockTenn CP, LLC*, 2014 WL 186835, at *23 (Del. Ch. Jan. 15, 2014) (citing *Carlyle*, 67 A.3d at 385-86; and *Ingres*, 8 A.3d 1143, 1147), *aff'd*, 103 A.3d 512 (Del. 2014).

20

in an unwarranted forum poses a threat of irreparable harm warranting a preliminary injunction."[58]

Defendants argue that recognition of their contractual priority rights by the Pennsylvania Court does no harm to Plaintiffs because Plaintiffs are already litigating in Pennsylvania and that whether VGRP has priority rights to purchase CCI and Compatriot's interests in Morrow Park City Apartments is separate from what the appraised price should be, which Defendants say is the only claim CCI currently has in Delaware.[59]

The ongoing Pennsylvania Action, however, relates to the sale of the Property in fee simple or an interest in MP Operating, while the contractual rights being litigated in Delaware concern interests in MP Holding and MP Managing. Once again, these are legally distinct entities and agreements. As filed, the actions are independent, and the Property could sell without affecting the rights Defendants are litigating in Delaware, unsatisfying as that might be to Defendants. Those rights— defined by Section 10.10 of the Operating Agreement and Section 1.1(a)(iv)(2) of the Redemption Agreement—are subject to exclusive forum-selection clauses in

---

[58]    *ASDC Hldgs., LLC v. Malouf*, 2011 WL 4552508, at *8 (Del. Ch. Sept. 14, 2011) (citing *Lefkowitz v. HWF Hldgs., LLC*, 2009 WL 3806299, at *2 n.5 (Del. Ch. Nov. 13, 2009); *HDS Inv. Hldg., Inc. v. Home Depot, Inc.*, 2008 WL 4604262, at *9 (Del. Ch. Oct. 17, 2008); *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 842 A.2d 1245, 1259 (Del. Ch. 2004)).

[59]    Defs.' Resp. in Opp. to Mot. for Interim Injunctive Relief 3.

21

both the Operating Agreement and Redemption Agreement that mandate resolution of disputes based on the Operating Agreement or Redemption Agreement be resolved in the United States District Court for the District of Delaware or either any Delaware State Court (for the Redemption Agreement) or the Delaware Court of Chancery (for the Operating Agreement). Requiring Plaintiffs to litigate that right outside of the contracted forum, as the Sale Order Motion or New Pennsylvania Action would do, is per se irreparable harm.[60] Defendants effectively argue that Plaintiffs' participation in the Pennsylvania Action and bids for the Property constitute a waiver of Plaintiffs' contractual exclusive-forum-selection-clause rights under the Operating Agreement. The ongoing litigation of distinct rights in the Pennsylvania Action does not constitute waiver of Plaintiffs' contractual forum-selection rights.

### D. Balance of Equities

As to the third element, a balance of the equities in favor of the moving party, Plaintiffs argue that Defendants will suffer no harm as a result of the enforcement of contractual provisions to which they agreed.[61] Conversely, Defendants argue that

---

[60] *See, e.g.*, *Carlyle*, 67 A.3d at 385-86 ("[Plaintiff] would suffer irreparable harm if it were required to litigate in [a different forum] in contravention of the bargain it struck with [Defendant] that is set forth in the forum selection clause of the Subscription Agreement.").

[61] Pls.' Mot. for Interim Injunctive Relief 9.

an injunction would cause them to lose a "valuable property right—the right to purchase [the Property]."[62]

Plaintiffs have shown that the Operating Agreement's exclusive forum-selection clause mandates disputes be brought in the Delaware Court of Chancery or United States District Court for the District of Delaware and that it will suffer irreparable harm if that contractual right is breached. Defendants' argument that an injunction would cause it to lose the right to purchase the Apartments is misguided. Section 10.10 of the Operating Agreement does not give Defendants the right to purchase the Apartments, and Defendants fail to point the Court to any other provision that does. To the extent that such a right exists in the MP Operating operating agreement, which has an exclusive forum-selection clause choosing Pennsylvania courts, Defendants have not pointed it out and it is not before me.

Much of Defendants' argument hinges on a disagreement about the corporate formalities involved. Defendants appear to see themselves as fighting for ownership of the Property in both the Delaware and the Pennsylvania Actions. As practical as that view might be, corporate formalities matter. In Delaware, Defendants are fighting for their rights to purchase interests in parent companies. In Pennsylvania,

---

[62]    Defs.' Resp. in Opp. to Mot. for Interim Injunctive Relief 20.

23

Defendants are involved in an auction for the Property itself. Although Defendants' desired outcome is the same in both actions, the two do not overlap.

Plaintiffs have shown that the equities are in their favor.

## IV. CONCLUSION

For the foregoing reasons, I conclude that Plaintiffs have satisfied the requisite elements for both prohibitory and mandatory injunctive relief, and I grant Plaintiffs' Motion for a Preliminary Injunction.

**IT IS SO ORDERED.**