**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

UNITED SERVICES AUTOMOBILE )
ASSOCIATION, and USAA LIFE )
INSURANCE COMPANY, )
                       )
         Plaintiffs, )
                       )
         v. )    C.A. No. 2021-0296-NAC
                       )
THE LIONS SHARE TRUST and )
KAREN A. ROULETTE, )
                       )
         Defendants. )

**ORDER DISMISSING COMPLAINT
<u>WITH LEAVE TO TRANSFER</u>**

WHEREAS:

1.     In 2017, Defendants filed a Uniform Commercial Code Financing Statement with the Delaware Secretary of State (the "UCC-1"). Plaintiffs allege that the UCC-1 is fraudulent and violates positive law because it records a fictitious security interest in their assets. *See* Dkt. 1 ¶¶ 10–16, 25–41 ("Compl.").

2.     Plaintiffs have identified statutory tools for correcting or terminating the UCC-1. *See id.* ¶¶ 19, 22. And they seem to accept that a court could declare the UCC-1 "invalid," "void," or "fraudulent." *See id.* ¶ A. Nevertheless, Plaintiffs also request (i) a mandatory injunction compelling the Secretary of State to "expunge" the UCC-1; and (ii) a prohibitive injunction preventing Defendants "from filing additional fraudulent documents" in the future. *Id.* ¶¶ B–C.

3.  I ordered briefing on the question of whether this Court has subject matter jurisdiction over this action. *See* Dkt. 23.[1] Plaintiffs argue that their requests for injunctive relief are sufficient to invoke this Court's jurisdiction.

NOW, THEREFORE, the Court having carefully considered Plaintiffs' complaint, supporting exhibits, and oral and written arguments, IT IS HEREBY ORDERED, this 21st day of February 2023, as follows:

1.  "The Court of Chancery is proudly a court of limited jurisdiction." *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019). Where, as here, a plaintiff seeks to ground jurisdiction solely on a request for injunctive relief, the plaintiff bears the burden to demonstrate "the absence of an adequate remedy at law." *In re COVID-Related Restrictions on Religious Servs.*, 285 A.3d 1205, 1230 (Del. Ch. 2022). A legal remedy is adequate if it would afford the plaintiff "full, fair, and complete relief." *El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995). In determining whether an adequate legal remedy exists, the Court "focus[es] upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing [its] claim." *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004). Through this exercise, the Court looks

---

[1] Although Defendants did not respond, jurisdictional questions cannot be waived. *See* Ct. Ch. R. 12(h)(3). So I deemed the issue ripe for decision anyway. *See* Dkt. 30.

behind the "facade of prayers" to determine the "true reason" for which the plaintiff has brought suit . . . . [A] judge in equity will . . . not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic "open sesame" to the Court of Chancery.

*Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991) (citations omitted). "If a realistic evaluation [of the complaint] leads to the conclusion that an adequate legal remedy is available[,] this court . . . will not accept jurisdiction over the matter." *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987).

2.      Based on a realistic evaluation of their complaint, Plaintiffs truly seek to correct or invalidate the UCC-1. At least three legal remedies would adequately achieve that objective.

3.      First, Plaintiffs may file an "information statement." *See* 6 *Del. C.* § 9-518. Under Article 9 of the Delaware Uniform Commercial Code, a person may file an information statement if the person "believes that the existing record is inaccurate or has been wrongly filed." *Off. Comm. of Unsecured Creditors of Motors Liquid. Co. v. JPMorgan Chase Bank*, 103 A.3d 1010, 1016 n.25 (Del. 2014). Once filed, an information statement effectively "give[s] public notice that the erroneously filed record is unreliable." *Id.* Accepting Plaintiffs' allegations as true, as I must at this stage,[2] an information statement would adequately provide third parties with notice that the UCC-1 records a non-existent security interest.

---

[2] *See Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 588 (Del. 1970).

3

4.      Second, Plaintiffs may seek monetary relief.  Under Article 9, a putative secured party must file a "termination statement" if, among other things, "the debtor did not authorize the filing of the [challenged] financing statement." 6 *Del. C.* § 9-513(c)(4).[3]  Failure to file a required termination statement may give rise to statutory damages.  *Id.* § 9-625(e)(4).  Here, Plaintiffs did not authorize Defendants to file the UCC-1.  So Plaintiffs demanded that Defendants file a termination statement.  *See* Compl. ¶¶ 19–21.  Defendants did not respond. Accepting Plaintiffs' allegations as true, damages are available to compensate them for resulting losses.  Indeed, Plaintiffs have requested damages here.  *See id.* ¶ D.

5.      Finally, Plaintiffs may seek a declaratory judgment.  Under the Declaratory Judgment Act, a court may "declare rights, status and other legal relations[.]" 10 *Del. C.* § 6501.  A court of law[4] thus may declare the UCC-1 invalid.

6.      Plaintiffs have pleaded these legal remedies.  Even so, Plaintiffs try to portray them as inadequate.  In their view, only an injunction would afford them complete relief because an injunction would force the Secretary of State to "expunge" the UCC-1 and prevent Defendants from filing another one.  I disagree.

---

[3]  A termination statement invalidates the challenged financing statement. *See* 6 *Del. C.*  § 9-513(d).

[4] Although this Court may, under certain circumstances, exercise its jurisdiction solely to issue a declaration, Plaintiffs do not argue that their request for a declaration, standing alone, confers equitable jurisdiction over their claims.

7.       To begin, Plaintiffs' expungement argument assumes that, without an injunction, the Secretary of State would not remove a financing statement that has been declared invalid by a court of law. But this theory imagines a "lawless society." *Mennella v. Albence*, 2023 WL 309042, at *2 (Del. Ch. Jan. 19, 2023). This Court presumes that government actors will obey declaratory judgments.[5] As a result, "injunctive relief is generally unavailable where the plaintiff's proposed injunction merely seeks to prospectively compel a government to conform with the interpretation of the law reflected in [a] declaratory judgment." *Crown Castle Fiber LLC v. City of Wilm.*, 2021 WL 2838425, at *5 (Del. Ch. July 8, 2021). Put differently, injunctive relief is generally not necessary to compel government compliance with a declaratory judgment until the government actor "*actually* refuses to comply with the judicial declaration." *Christiana Town Ctr., LLC v. New Castle Cnty.*, 2003 WL 21314499, at *4 n.19 (Del. Ch. June 6, 2003) (emphasis in original).

8.       Here, Plaintiffs offer no reasonably conceivable basis for me to conclude that, without an injunction, the Secretary of State would ignore a declaration from a Delaware court of law deeming the UCC-1 invalid. In fact, the opposite seems true. Understanding why involves some statutory perambulation.

---

[5] *See, e.g.*, *Middlecap Assocs., LLC v. Town of Middletown*, 2023 WL 1815798, at *2 (Del. Ch. Feb. 2, 2023); *Delta Eta Corp. v. City of Newark*, 2021-1106-MTZ (Del. Ch. Feb. 2, 2023); *Mennella*, 2023 WL 309042, at *2; *COVID-Related Restrictions*, 285 A.3d at 1233; *Birney v. Del. Dep't of Safety & Homeland Sec.*, 2022 WL 16955159, at *2 (Del. Ch. Nov. 16, 2022); *Gladney v. City of Wilm.*, 2011 WL 6016048, at *4 (Del. Ch. Nov. 30, 2011).

9.      To be legally "sufficient," a financing statement must provide the name of a "debtor" and "secured party" and indicate the "collateral." 6 *Del. C.* § 9-502(a). Section 9-102 of Article 9 defines these terms. *See id.* § 9-102(a)(12), (28), (73). So a financing statement is not sufficient unless the financing statement identifies parties and security interests that fit Section 9-102's definitions.

10.     Moreover, a "sufficient" financing statement is not necessarily an "effective" one. Article 9 provides that the filing of a financing statement is "effective only to the extent it was filed by a person that may file it under Section 9-509." *Id.* § 9-510(a). Under Section 9-509, a person may file a financing statement "only if the debtor authorizes the filing in an authenticated record[.]" *Id.* § 9-509(a)(1). Read as a whole, a financing statement is not "effective" under Section 9-509 unless properly authorized by a "debtor" defined under Section 9-102.[6]

11.     Against this background, the "filing office," which is defined to include the Secretary of State,[7] is "not expected to make legal judgments" about the "content" of a financing statement. *Id.* § 9-520 cmt. 2. Instead, the Secretary of State generally will accept a financing statement that superficially appears valid. *See id.* § 9-516(a). That means the Secretary of State may sometimes accept a financing

---

[6] The Delaware Supreme Court has held that Section 9-509 is unambiguous and should be construed as part of the "statutory chain" linking Article 9 together. *See Unsecured Creditors of Motors Liquid. Co.*, 103 A.3d at 1014–15.

[7] *See* 6 *Del. C.* § 9-501(a)(2).

statement that names persons who are not actually "debtors" or "secured parties" under Section 9-102 or that was not "authorized by a debtor" under Section 9-509.

12. This is where the law may step in. Article 9 "cannot provide a . . . complete solution to problems caused by . . . 'bogus' filings." *Id.* § 9-518 cmt. 3. So it created "nonjudicial means" for addressing inaccurate filings (*e.g.*, information and termination statements). *Id.* § 9-518 cmt. 2. And those nonjudicial means do not "displace" judicial remedies. *Id.* To the contrary, Article 9 envisions "judicial proceedings" for "correcting the public record" as well. *Id.* § 9-518 cmt. 3.

13. All this leads back to the adequacy of a declaratory judgment. Accepting Plaintiffs' allegations as true, it is possible that Plaintiffs are not "debtors" and that Defendants are not "secured parties." A court of law thus could possibly declare that the UCC-1 is void *ab initio* due to infirmities in its contents. Such a ruling would seem to require the Secretary of State to retroactively reject the UCC-1 as "insufficient" or "ineffective."[8] That maneuver would "expunge" the UCC-1. Accordingly, Plaintiffs do not need an injunction too.

14. Nor does Plaintiffs' prospective injunction invoke jurisdiction. "An injunction against future wrongdoing is generally not available." *Organovo Hldgs.,*

---

[8] *See id.* §§ 9-520(a), (c) & cmt. 2, 9-516(b), 9-513(d), 9-502(a); *see also id.* § 9-522(b). This analysis does not foreclose any other avenues for legal relief from adverse government action, including a common law writ of *mandamus*. *See, e.g.*, *Mock v. Div. of State Police*, 2022 WL 1744439, at *6 (Del. Ch. May 31, 2022).

*Inc. v. Dimitrov*, 162 A.3d 102, 114 (Del. Ch. 2017). So, to invoke equitable jurisdiction on a prospective basis, the plaintiff must allege facts that "create a reasonable apprehension of a future wrong." *McMahon*, 532 A.2d at 606; *accord COVID-Related Restrictions*, 285 A.3d at 1233. Here, Plaintiffs seek to enjoin Defendants from filing "fraudulent documents" in the future. Compl. at ¶ C.[9] But there are no facts creating a reasonable apprehension that Defendants will file a document akin to the UCC-1 again. Indeed, the UCC-1 was filed in 2017. And Plaintiffs have not reported any similar filings made over the last four years.[10] Accordingly, on these facts, Plaintiffs' concerns are too speculative to invoke equitable jurisdiction.

15. To reach the opposite conclusion, Plaintiffs cite *Green Tree Servicing LLC v. Walker*, 2009 WL 4768132 (Del. Ch. Dec. 11, 2009). *Green Tree* is a post-evidentiary-hearing order that granted the same relief Plaintiffs seek here. The defendant did not appear in *Green Tree*,[11] and the record suggests that neither the

---

[9] Plaintiffs *do not* seek a mandatory injunction compelling *Defendants* to take steps to correct or remove the UCC-1 themselves. This Order therefore does not consider whether such a request would be sufficient to invoke equitable jurisdiction.

[10] Indeed, my remedial analysis is likely colored by the fact that Plaintiffs waited four years before seeking injunctive relief.

[11] *See* Dkt. 14, C.A. No. 5072-VCN (Del. Ch. Dec. 11, 2009).

plaintiff nor the court raised subject matter jurisdiction. *Green Tree*, then, does not alter my analysis.[12]

16.     In sum, Plaintiffs have an adequate remedy at law. So I lack jurisdiction over their claims. Plaintiffs have requested that any dismissal be without prejudice so that they could pursue their claims in the Superior Court of Delaware. Dkt. 25 at 13 n.30. Accordingly, I DISMISS the complaint WITHOUT PREJUDICE to Plaintiffs' right to transfer this action to the Superior Court. *See* 10 *Del. C.* § 1902.[13]


                                        _____*/s/ Nathan A. Cook*_____
                                        Vice Chancellor Nathan A. Cook

---

[12] Plaintiffs acknowledge that *Green Tree* is the only Delaware decision they could locate that exercised equitable jurisdiction to grant the relief sought here. *See* Dkt. 25 at 6. Plaintiffs' other Delaware authority stands for the proposition that this Court has jurisdiction if a plaintiff requests equitable relief and lacks an adequate remedy at law. *Id.* at 7–10. Here, however, Plaintiffs do have an adequate remedy at law. Plaintiffs also cite limited federal decisions issuing injunctions requiring removal of fraudulent Article 9 filings. *See id.* at 10–12. Federal equitable rulings "must be considered cautiously in Delaware," *Berkowitz v. MacPherson*, 1995 WL 1799136, at *1 (Del. Ch. July 24, 1995), where, unlike the federal structure—and in nearly all other states—there is a "historic and constitutional separation of law and equity," *Monroe Park, L.P. v. Metro. Life Ins. Co.*, 457 A.2d 734, 738 (Del. 1983); *see XRI Inv. Hldgs. LLC v. Holifield*, 283 A.3d 581, 635–37 (Del. Ch. 2022); *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 143 (Del. Ch. 2014). Plus, I question whether, in the non-Delaware cases, damages, a declaration, or even criminal penalties would have been inadequate. *See* 6 *Del. C.* § 9-518 cmt. 3. To be sure, there may exist situations where this Court might issue an injunction, depending on the facts and issues involved. For example, perhaps injunctive relief would be available if the plaintiff pleaded facts creating a reasonable apprehension that the defendant has made and will continue to make serial filings absent relief. As pleaded, however, that scenario is not reasonably conceivable here.

[13] Failure to properly transfer this action to the Superior Court within the statutory period will result in dismissal of the complaint with prejudice.

9