# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID NAMDAR, | ) | |
| | ) | |
| Plaintiff and Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-0535-JTL |
| | ) | |
| JORDAN FRIED and JEFFREY GARRETT LONG, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IMMUTABLE HOLDINGS INC., | ) | |
| | ) | |
| Defendant and Counterclaim Plaintiff. | ) | |

## OPINION DENYING MOTION TO DISMISS CLAIM FOR DAMAGES FOR BREACH OF FORUM SELECTION CLAUSE

Date Submitted: March 20, 2025
Date Decided: June 6, 2025

Barnaby Grzaslewicz, Sarah M. Ennis, Aubrey J. Morin, MORRIS JAMES LLP, Wilmington, Delaware; Andrew G. Prout, Traci G. Choi, Stephanie V. Phan, ROSS, WOLCOTT, TEINERT & PROUT LLP, Costa Mesa, California; *Attorneys for Plaintiff and Counterclaim Defendant.*

David E. Ross, Roger S. Stronach, Dylan T. Mockensturm, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Travis G. Edwards, Jonathan I. Liebman, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, PLLC, Washington, D.C.; *Attorneys for Defendants and Counterclaim Plaintiff.*

**LASTER, V.C.**

This decision addresses whether a party claiming breach of a forum selection clause can recover damages measured by the expenses incurred litigating in the foreclosed forum. The plaintiff originally filed suit in Puerto Rico. That court dismissed the action, holding that a forum selection clause mandated suit in this court. When the plaintiff sued here, one defendant asserted a counterclaim alleging breach of the forum selection clause and sought damages measured by the expenses[1] incurred litigating in Puerto Rico. The plaintiff moved to dismiss the counterclaim as failing to state a claim on which relief can be granted.

In *El Paso*, the Delaware Supreme Court held that a party could recover damages for breach of a forum selection clause measured by the expenses incurred

---

[1] This decision uses the term "expenses" to refer collectively both to attorneys' fees and amounts paid out of pocket that might more colloquially be called expenses. This is how Section 145 of the Delaware General Corporation Law (the "DGCL") deploys the term. *See, e.g.*, 8 *Del. C.* § 145(a) (allowing a corporation in a proceeding other than one brought by or in the right of the corporation to provide indemnification "against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred"); *id.* § 145(b) (allowing a corporation in a proceeding brought by or in the right of the corporation to provide indemnification "against expenses (including attorneys' fees) actually and reasonably incurred"); *id.* § 145(c) (mandating corporation to indemnify a director or officer who was successful on the merits or otherwise in defending a proceeding "against expenses (including attorneys' fees) actually and reasonably incurred"). The out-of-pocket expenses encompassed by Section 145 are broader than the restricted concept of "costs" in the statute that authorizes the recovery of court costs. *See* 10 *Del. C.* § 5106; *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 685–88 (Del. 2013).

litigating in a foreclosed forum.[2] This court's decisions have split.[3] Three have either awarded that damages measure or acknowledged its availability.[4] One declined to

---

[2] *El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 40 (Del. 1995).

[3] The conflicting decisions in this jurisdiction parallel a broader conflict across jurisdictions. Although few cases address the issue, "[t]he case law is divided into two camps, those cases that allow damages for breach of a forum selection clause and those that do not. Neither of these camps does a particularly good job of explaining why a litigant should or should not be able to recover damages for breach of a forum selection clause." Tanya J. Monestier, *Damages for Breach of a Forum Selection Clause*, 58 Am. Bus. L.J. 271, 287 (2021).

[4] *Advent Int'l, L.P. v. Servicios Funerarios GG S.A. de C.V.*, 2024 WL 3580934, at *12 (Del. Ch. June 7, 2024); *XRI Inv. Hldgs. LLC v. Holifield*, 2024 WL 3517630, at *18–20 (Del. Ch. July 24, 2024); *Cornerstone Brands, Inc. v. O'Steen*, 2006 WL 2788414, at *4 (Del. Ch. Sept. 20, 2006).

In a fourth decision, Chancellor Allen implied that a party could recover damages for breach of a forum selection clause. A party argued it was being harmed because it could not recover the expenses it was incurring to defend a second-filed action. Chancellor Allen noted that "the reason that such costs are not assessable as damages is that [the party] *has no legal right not to be sued on this claim in Texas. . . .* Such a substantive legal right might be created, for example, by a contact [sic] provision designating a particular forum as the exclusive forum for resolution of disputes arising under the contract. . . . To bring such a suit does not constitute an actionable wrong, so long as no contract or statute proscribes it." *Household Int'l, Inc. v. Eljer Indus., Inc.* (*Household II*), 1994 WL 469169, at *4 (Del. Ch. Aug. 12, 1994) (Allen, C.) (emphasis in original). That reasoning suggests that where a forum selection clause exists, a party has a right to be free of suit in a foreclosed forum and can enforce that right in equity or through a damages award.

For scholarly treatments supporting a party's ability to recover damages for breach of a forum selection clause, *see* Monestier, *supra* note 3; Richard Frimpong Oppong & Shannon Kathleen Clark Gibbs, *Damages for Breach and Interpretation of Jurisdiction Agreements in Common Law Canada*, 95 Can. Bar Rev. 383 (2017); Albert Dinelli, *The Limits on the Remedy of Damages for Breach of Jurisdiction Agreements: The Law of Contract Meets Private International Law*, 38 Melb. U. L. Rev. 1023 (2015); Daniel Tan, *Damages for Breach of Forum Selection Clauses,*

award damages, reasoning that the later Delaware Supreme Court decision in *Ingres*[5] overruled *El Paso* by directing courts to enforce forum selection clauses through injunctive relief.[6]

Although *Ingres* overruled *El Paso* on whether the Delaware courts could grant injunctive relief to enforce forum selection clauses, *Ingres* did not overrule *El Paso* on a party's ability to recover damages for breach of a forum selection clause. The issuance of an injunction does not preclude a party from also recovering damages incurred before the injunction issues. Just as a party that obtains an injunction enforcing a restrictive covenant can obtain damages for pre-enforcement harm, so too can a party that obtains a ruling enforcing a forum selection clause. The same is true when a party has obtained an order enforcing a forum selection clause by dismissing a non-compliant action. The part of *El Paso* stating that a party can recover damages for breach of a forum selection clause remains good law, and this decision follows it.

---

*Principled Remedies, and Control of International Civil Litigation*, 40 Tex. Int'l L.J. 623 (2005).

[5] *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143 (Del. 2010).

[6] *Vivint Solar, Inc. v. Lundberg*, 2024 WL 2755380, at *38–40 (Del. Ch. May 30, 2024), as corrected (Del. Ch. June 18, 2024), *aff'd on other grounds*, — A.3d —, 2025 WL 855020 (Del. Mar. 19, 2025) (ORDER). The parties did not appeal the ruling on the availability of damages for breach of a forum selection clause, so the Delaware Supreme Court's affirmance did not extend to that issue. *Vivint Solar, Inc. v. Lundberg*, C.A. No. 2020-0988, Dkt. 193 (Del. Ch. July 17, 2024) (ORDER); Notice of Appeal, *Vivint Solar, Inc. v. Lundberg, Inc.*, C.A. No. 335, 2024, (Del. Aug. 16, 2024), Dkt. 1 (appealing only sections (b) and (e) of the Final Order; and not appealing section (a) on availability of damages for breach of a forum selection clause).

This decision also rejects the plaintiff's other arguments for dismissal, including his reliance on the American Rule. The American Rule bars a party from recovering litigation expenses unless an exception applies. The standard remedy for breach of contract is expectation damages. A party protected by a forum selection clause can reasonably expect not to have to litigate a foreclosed forum *and* not to incur expenses doing so. An injunction or dismissal enforcing the forum selection clause fulfills the first expectation. A damages award measured by the expenses incurred in the foreclosed forum fulfills the second expectation.

The American Rule does not bar a party from recovering damages, even if those damages are measured by litigation expenses in another action. The American Rule still forecloses a party from recovering enforcement expenses. In this setting, that means the expenses incurred to recover the damages award.

Parties can contract around the American Rule. When a contract provides for fee-shifting, then the party benefiting from the clause can both obtain primary relief and recover enforcement expenses. That means when a party has breached a forum selection clause and the breach implicates a fee-shifting provision, the non-breaching party can recover both primary relief in the form of damages measured by the expenses incurred in the foreclosed forum *and* the enforcement expenses incurred in the non-foreclosed forum under the fee-shifting clause.

In this case, the plaintiff breached the forum selection clause. The defendant therefore can recover damages measured by the expenses incurred in the Puerto Rico action. The dismissal of the Puerto Rico action does not foreclose the defendant from

4

recovering the damages it suffered before obtaining that ruling. The contract contains a fee-shifting provision, so the defendant can also recover the expenses incurred in this action to obtain the damages award.

There are policy concerns at play. This case involves sophisticated parties who negotiated the governing agreement, so it does not present issues associated with contracts of adhesion or agreements between parties with disparate bargaining power. Nor does it present a case involving inequitable conduct. Those situations could warrant a different result.[7]

Accordingly, the counterclaim states a claim on which relief can be granted. The motion to dismiss is denied as to Count I.

---

[7] *Vivint* provides an example of such a case. Besides interpreting *Ingres*, that decision took into account equitable factors, consistent with this court's best tradition. The Delaware litigation was just one of several simultaneous suits between a corporation and a former employee involving multiple contracts with different forum selection clauses. One agreement selected the Utah courts. A virtually identical agreement selected the Delaware courts. A third chose arbitration. The employee brought all of his claims in Utah federal court and later proposed to litigate in a single forum. The corporation rejected the employee's proposal and insisted on enforcing the forum selection clauses. *Vivint*, 2024 WL 2755380, at *10. When granting the corporation's motion for an anti-suit injunction, the court noted the resulting inefficiency, describing the practice as "inefficient and a waste of all parties' resources." *Vivint Solar, Inc. v. Lundberg*, C.A. No. 2020-0988, Dkt. 48 at 30 (Del. Ch. Jan. 20, 2021) (TRANSCRIPT). If there was a case that demonstrated how an award of damages for breach of a forum selection clause could be inequitable, *Vivint* was it.

5

# I.    FACTUAL BACKGROUND

The factual background draws on the counterclaim's well-pled allegations and the documents it incorporates by reference, which are assumed to be true for purposes of the motion.

## A.    Namdar Joins The Company.

David Namdar describes himself as an accomplished cryptocurrency entrepreneur, investor, and pioneer in the digital assets and blockchain space. In 2020, he met Jordan Fried, another cryptocurrency entrepreneur and investor. They became friends, and in 2021, Fried invited Namdar to lead and invest in Immutable Holdings Inc. (the "Company").

Namdar became the Company's president. He also invested $100,000 in the Company.

## B.    The Agreement

Namdar soon butted heads with Jeffrey Long, the Company's Head of Legal. Later in 2021, Fried excluded Namdar from a fundraising trip with Company board members.

After the trip, disputes arose. Namdar publicly accused Fried and the Company of not fulfilling their promises. In response, Fried and the Company accused Namdar of breaching a confidentiality agreement that contained a non-disparagement clause.

To resolve the disputes, Namdar and the Company entered into a settlement agreement styled as an employment agreement (the "Agreement"). Namdar accepted

6

1% of the Company's equity and a salary of $15,000 per month. The Agreement contained a broad release of claims.[8]

## C.  The Puerto Rico Action

After the parties executed the Agreement, Fried cut Namdar out of the Company. Namdar sued the Company and Fried in the Superior Court of San Juan, Puerto Rico (respectively, the "Puerto Rico Action" and the "Puerto Rico Court"). His complaint alleged breach of fiduciary duty, fraud, breach of contract, promissory estoppel, and unjust enrichment.

The Company and Fried moved to dismiss for improper venue, relying on a forum selection clause in the Agreement that stated: "Any action or proceeding by [Namdar] to enforce this Agreement shall be brought only in the state or federal courts located in the State of Delaware" (the "Forum Selection Clause").[9] Namdar challenged the validity of the Agreement, asserting that the defendants procured it by fraud.

The Puerto Rico Court dismissed the action and held that Namdar must file his claims in Delaware. That ruling has become final.

_____

[8] Dkt. 10 Ex. 2 § 14 [hereinafter Agr.].

[9] Agr. § 18. The Company reserved its right to sue in Puerto Rico, Delaware, or wherever Namdar could be found. *See id.* ("Any action or proceeding by the Company to enforce this Agreement may be brought in the state or federal courts located in the State of Delaware, in the Courts of Puerto Rico, or in any other location where [Namdar] may be found or maintain a presence at the Company's election.").

7

**D.     This Action**

In 2024, Namdar sued Fried, Long, and the Company here. The Company filed counterclaims. Count I asserted a claim for breach of the Forum Selection Clause and sought damages measured by the expenses incurred in the Puerto Rico Action ("Puerto Rico Expenses"). Count II asserted that the Puerto Rico Act and the Delaware lawsuit violated a release in the Agreement. Each side moved to dismiss the claims against it. The court dismissed Namdar's claims in an oral ruling. This decision addresses Namdar's motion to dismiss Count I of the counterclaims.

## II.     LEGAL ANALYSIS

Namdar moved to dismiss the counterclaims under Rule 12(b)(6) for failing to state a claim on which relief can be granted. When considering such a motion, the court (i) accepts as true all well-pled factual allegations in the pleading, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the claimant.[10] The motion to dismiss will be denied "unless the [claimant] would not be entitled to recover under any reasonably conceivable set of circumstances."[11]

**A.     The Claim For Damages For Breach Of The Forum Selection Clause**

The Company seeks damages for breach of the Forum Selection Clause. Under Delaware law, the elements of a claim for breach of contract are "(i) a contractual

---

[10] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

[11] *Id.*

8

obligation, (ii) a breach of that obligation by the defendant, and (iii) a causally related injury that warrants a remedy, such as damages or in an appropriate case, specific performance."[12]

In this lawsuit, Namdar sought to invalidate the Agreement on the basis of fraud, but the court dismissed his claims. The Agreement is therefore valid. Not only that, but Namdar's fraud claim only addressed the Agreement as a whole. It did not specifically address the Forum Selection Clause. The fraud claim therefore could not have relieved Namdar of his obligation to sue in a permitted forum.[13] The Forum Selection Clause represents a valid contractual obligation.

The Puerto Rico Court read the Forum Selection Clause to require that Namdar file his claims in this court. By dismissing the Puerto Rico Action, the Puerto Rico Court held that Namdar's filing breached the Forum Selection Clause.

Namdar did not appeal the Puerto Rico Court's decision, which is now final. Under federal law, "[t]he records and judicial proceedings of any court of any . . . State, Territory or Possession" of the United States "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are

---

[12] *AB Stable VIII LLC v. MAPS Hotels & Resorts One LLC*, 2020 WL 7024929, at *47 (Del. Ch. Nov. 30, 2020), *aff'd*, 268 A.3d 198 (Del. 2021); *accord In re Dura Medic Hldgs., Inc. Consol. Litig.*, 333 A.3d 227, 245 (Del. Ch. 2025).

[13] *See infra* note 83.

taken."[14] Likewise under Delaware law, a foreign judgment entered by a court in the United States "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying, as a judgment of the Superior Court of this State and may be enforced or satisfied in like manner."[15] A Delaware court therefore must give a foreign judgment the same force and effect that the rendering court would give it.[16]

No one disputes that the Puerto Rico Court would treat its dismissal as final, conclusive, and binding as to Namdar as to the meaning of the Forum Selection Clause. That adjudication has the same effect in this court. The element of breach is therefore established.

The Company alleges harm measured by the Puerto Rico Expenses. Under blackletter law, a non-breaching party can recover expectation damages measured by "the loss in the value . . . of the other party's performance caused by its failure or deficiency," plus "any other loss, including incidental or consequential loss, caused by

---

[14] 28 U.S.C. § 1738; *see* U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.").

[15] 10 *Del. C.* § 4782.

[16] *See Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 615–16 (Del. 2013).

10

the breach," minus "any cost or other loss" that the non-breaching party "avoided by not having to perform."[17]

"Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made."[18] A loss may be foreseeable as a probable result of breach if the loss would follow from breach either (1) in the ordinary course of events or (2) as a result of special circumstances that the breaching party had reason to know.[19]

> A contracting party is generally expected to take account of those risks that are foreseeable at the time he makes the contract. He is not, however, liable in the event of breach for loss that he did not at the time of contracting have reason to foresee as a probable result of such a breach. The mere circumstance that some loss was foreseeable, or even that some loss of the same general kind was foreseeable, will not suffice if the loss that actually occurred was not foreseeable. It is enough, however, that the loss was foreseeable as a probable, as distinguished from a necessary, result of his breach. . . . [T]he test is an objective one based on what he had reason to foresee.[20]

A party can recover breach-of-contract damages measured by expenses incurred addressing litigation that foreseeably resulted from the breach:

> Litigation or settlement caused by breach. Sometimes a breach of contract results in claims by third persons against the injured party. The party in breach is liable for the amount of any judgment against the injured party together with his reasonable expenditures in the litigation, if the party in breach had reason to foresee such expenditures

---

[17] Restatement (Second) of Contracts § 347 (Am. L. Inst. 1981), Westlaw (database updated Oct. 2024).

[18] *Id.* § 351(1).

[19] *Id.* § 351(2).

[20] *Id.* § 351 cmt. a.

11

as the probable result of his breach at the time he made the contract. . . . In furtherance of the policy favoring private settlement of disputes, the injured party is also allowed to recover the reasonable amount of any settlement made to avoid litigation, together with the costs of settlement.[21]

Once again, the loss must be foreseeable.

When Namdar breached the Forum Selection Clause, the Company became entitled to recover "the loss in the value . . . of the other party's performance caused by its failure or deficiency."[22] Namdar's expected performance included compliance with the Forum Selection Clause. That clause addressed the possibility that Namdar might sue in a jurisdiction other than Delaware. The Company had its principal place of business in Puerto Rico, and Namdar and Fried lived in Puerto Rico when the underlying events took place. That made it foreseeable that Namdar might sue in Puerto Rico. Through the Forum Selection Clause, Namdar agreed only to sue in Delaware. The Company therefore had a reasonable expectation that Namdar would not assert claims elsewhere, including in Puerto Rico.

The Company also had a reasonable expectation that it would not have to suffer damages litigating elsewhere, including in Puerto Rico. By filing the Puerto Rico Action and forcing the Company to incur the Puerto Rico Expenses, Namdar defeated both expectations. By dismissing the Puerto Rico Action, the Puerto Rico Court granted forward-looking relief protecting the Company's first expectation. That

---

[21] *Id.* § 351 cmt. c.

[22] *Id.* § 347.

relief, however, did not address the Company's expectation that it would not suffer damages from litigating in Puerto Rico. Only an award of damages measured by the Puerto Rico Expenses can do that.

When discussing the ability to recover litigation-related damages, the Restatement speaks of "reasonable expenditures in the litigation, if the party in breach had reason to foresee such expenditures as the probable result of his breach at the time he made the contract."[23] It was foreseeable that the Company would incur expenses litigating in a foreclosed jurisdiction if Namdar breached the Forum Selection Clause.

The elements of a claim for breach of contract under Delaware law also require that the damages be "causally related" to the breach.[24] Perhaps some expenses incurred litigating in a foreclosed forum might not flow causally from the breach; they might be expenses that a party would have incurred regardless. Here, it is reasonable to infer that at least some (if not all) of the Puerto Rico Expenses would not have been incurred and represent recoverable damages.

As a matter of blackletter law, therefore, the Company has stated a claim for breach of the Forum Selection Clause.

---

[23] *Id.* § 351 cmt. c.

[24] *AB Stable,* 2020 WL 7024929, at *47; *accord Dura Medic*, 333 A.3d at 245.

13

## B. Delaware Case Law

Delaware case law supports the Company's claim to recover damages for breach of the Forum Selection Clause. The controlling Delaware Supreme Court decision is *El Paso*, where the justices held that a party could invoke a forum selection clause to obtain dismissal of an action filed in the wrong forum and, "if successful, recover the costs of that litigation."[25] The *El Paso* decision addresses the scenario presented here. Namdar filed suit in Puerto Rico, a foreclosed forum. The Company invoked the Forum Selection Clause and obtained dismissal. The Company can now "recover the costs of that litigation."[26]

Ten years after *El Paso*, this court decided *O'Steen*. There, a company asserted a claim for breach of a forum selection clause against an executive, who moved to dismiss under Rule 12(b)(6). The court held that the company stated a claim for damages measured by the expenses incurred in the foreclosed forum.[27] The decision cited *El Paso* and precedents from other jurisdictions.[28]

---

[25] *El Paso*, 669 A.2d at 40.

[26] *Id.*

[27] *O'Steen*, 2006 WL 2788414, at *4.

[28] *Id.* at *4 n.17 (first citing *Lab. Corp. of Am., Inc. v. Upstate Testing Lab., Inc.*, 967 F. Supp. 295, 299 (N.D. Ill. 1997) (stating that a party "has a right to enforce [a forum selection clause] and recover damages for its breach"); then citing *Indosuez Int'l Fin., B.V. v. Nat'l Rsrv. Bank*, 758 N.Y.S.2d 308, 311 (N.Y. App. Div. 2003) ("[D]amages may be obtained for a breach of a forum selection clause [sic] and an award of such damages does not contravene the American Rule that deems attorneys' fees a mere incident of litigation."); and then citing *Masiongale Elec.-Mech., Inc. v.*

14

More recently, in 2024, this court awarded litigation expenses as damages in *XRI*. Early in the case, the court denied a motion to stay the Delaware litigation in favor of a first-filed Texas action, holding that a forum selection clause in the governing agreement required that the Delaware claims proceed here.[29] At trial, the plaintiff neither pressed a claim for breach of the forum selection clause nor advanced other theories that would entitle it to recover damages measured by the expenses incurred in Texas. The court held that the plaintiff had waived those claims.[30] The Delaware Supreme Court reversed and remanded with instructions to "consider the amount of damages to which *XRI* is entitled."[31] This court relied on the blackletter principles set forth above to calculate damages, with part of the award measured by the expenses incurred in Texas.[32]

Also in 2024, this court acknowledged in *Advent* that breaching a forum selection clause could lead to damages.[33] After issuing an injunction foreclosing the

---

*Constr. One, Inc.*, 806 N.E.2d 148, 150 (Ohio 2004) (affirming award of damages for breach of forum selection clause)).

[29] *XRI Inv. Hldgs. LLC. v. Holifield*, C.A. No. 2021-0619-JTL, Dkt. 46 (Del. Ch. Feb. 16, 2022) (ORDER); *see XRI Inv. Hldgs. LLC. v. Holifield*, C.A. No. 2021-0619-JTL, Dkt. 47 at 50–59 (Del. Ch. Feb. 28, 2022) (TRANSCRIPT).

[30] *See XRI*, 2024 WL 3517630, at *12–13.

[31] *Id.* at *14 (quoting *Holifield v. XRI Inv. Hldgs. LLC*, 304 A.3d 896, 938 (Del. 2023)).

[32] *Id.* at *19–20.

[33] *Advent*, 2024 WL 3580934, at *12.

15

counterparty from litigating in a foreclosed forum, the court refused to rule out the possibility of damages. To the contrary, the court held that the claims asserted in the foreclosed forum breached the forum selection clause and that the plaintiff "was damaged as a result."[34]

Under these precedents, the Company has stated a claim for breach of the Forum Selection Clause.

## C. The Exclusive Remedy Argument

Namdar assets that the Company cannot recover damages for breach of the Forum Selection Clause because in *Ingres*, the Delaware Supreme Court instructed this court to enforce forum selection clauses through injunctive relief. Namdar reads *Ingres* as making injunctive relief an exclusive remedy. Contrary to his interpretation, multiple authorities demonstrate that in addition to securing injunctive relief, a party can recover damages incurred before the injunction issues.

### 1. Equity Can Provide Complete Relief.

Starting from first principles, injunctive relief is generally not an exclusive remedy. A court of equity seeks to provide parties with complete relief. If complete relief requires exercising jurisdiction over issues that a court of law could otherwise

---

[34] *Id.*

16

address, then the clean-up doctrine allows a court of equity to act.[35] That includes awarding damages to supplement an equitable decree.[36]

Case law governing awards of specific performance illustrates this principle. As to forward-looking performance, a decree of specific performance obviates the need for a damages award. But a party may have suffered damages before the decree of specific performance, or the decree may not be able to implement the contract perfectly. In that setting, "[e]quity may, when its jurisdiction is invoked to obtain specific performance of a contract, award damages or pecuniary compensation along with specific performance when the decree as awarded does not give complete and full relief."[37] This court did so earlier this year.[38]

A claim for breach of a restrictive covenant provides another example. "When a defendant breaches a restrictive covenant, the plaintiff can sue for an injunction to stop the defendant from doing what he promised not to do, and the plaintiff can also

---

[35] *E.g.*, *Getty Ref. & Mktg. Co. v. Park Oil, Inc.*, 385 A.2d 147, 149 (Del. Ch. 1978), *aff'd*, 407 A.2d 533 (Del. 1979).

[36] *See* Tan, *supra* note 4, at 646.

[37] *Tri State Mall Assocs. v. A. A. R. Realty Corp.*, 298 A.2d 368, 371 (Del. Ch. 1972). *See generally* John Norton Pomeroy, *Pomeroy's Equity Jurisprudence* vol. 1 § 237b (Spencer W. Symons ed., 5th ed. 1941) ("[T]he chancellor has full jurisdiction, in addition to decreeing specific performance, to award such legal damages as have resulted from delay in performance of the contract.").

[38] *See O'Connor v. Beachy Keen Servs., LLC*, 2025 WL 801165, at *4–5 (Del. Ch. Mar. 13, 2025) (awarding specific performance plus damages incurred from breach).

sue for any damages occasioned by the breach in the interim."[39] The grant of equitable relief does not foreclose the incremental damages award.

Here, the Puerto Rico Court enforced the Forum Selection Clause in a manner equivalent to specific performance by dismissing the Puerto Rico Action. But that relief did not make the Company whole because the Company incurred the Puerto Rico Expenses. Just as a decree of specific performance or other equitable relief does not rule out a damages award, the dismissal of the Puerto Rico Action does not prevent the Company from recovering damages measured by the Puerto Rico Expenses.[40]

---

[39] Monestier, *supra* note 3, at 302. *E.g.*, *Wright v. Scotton*, 121 A. 69, 76 (Del. 1923) (affirming the Chancellor's "right to grant, not only an injunction against future breaches, but also to award damages for past breaches" in a suit for breach of a restrictive covenant); *Concord Steel, Inc. v. Wilm. Steel Processing Co.*, 2009 WL 3161643, at *17 (Del. Ch. Sept. 30, 2009) (awarding injunctive relief, monetary damages, and attorneys' fees in a breach of a non-competition covenant); *accord Presto-X-Co. v. Ewing*, 442 N.W.2d 85, 90 (Iowa 1989) ("Damages may be awarded in addition to an injunction in cases involving covenants not to compete."); *Frank D. Wayne Assocs., Inc. v. Lussier*, 454 N.E.2d 109, 112 (Mass. App. Ct. 1983) (affirming judgment awarding damages for the period between the breach and the injunction order)*, appeal denied*, 456 N.E.2d 496 (Mass. 1983).

[40] Professor Monestier resists equating the dismissal of an action as comparable to equitable relief, arguing that "[w]hen a court decides to dismiss or transfer an action, it is *not* awarding specific performance in the contractual sense" but applying its own rules of decision. Monestier, *supra* note 3, at 296. She makes this argument because she initially accepts the incorrect premise that specific performance and damages are alternative remedies. *Id.* at 295. For the reasons explained above the line, that premise is incorrect, and Professor Monestier later acknowledges that. *See id.* at 298. But when pursuing her first line of argument, she concludes that a party can recover damages for breach of a forum selection clause, even if a court has enforced the clause by dismissing or enjoining the action filed in the foreclosed forum. *Id.* ("[T]he promise that a party has breached is the promise not

18

## 2. *Ingres* Did Not Foreclose A Damages Remedy.

To argue that specific performance is an exclusive remedy, Namdar invokes *Ingres*, where the Delaware Supreme Court stated: "Forum selection clauses are presumptively valid and should be specifically enforced unless the resisting party clearly shows that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud and overreaching."[41] Namdar argues that under this holding, "the appropriate remedy for breach of a forum selection clause is specific performance, not money damages."[42] Namdar thus interprets *Ingres* to have overruled *El Paso* and made specific performance an exclusive remedy.

*Ingres* did overrule *El Paso* in part, but only so much as the earlier decision held that the Court of Chancery lacked subject matter jurisdiction to issue an anti-suit injunction, which meant the non-breaching party could only raise the forum selection clause as a defense in the foreclosed forum. *Ingres* disagreed and instructed this court to issue anti-suit injunctions enforcing forum selection clauses. But that analysis did not rule out the possibility that the non-breaching party could also obtain

---

to sue in any nondesignated forum. This promise is only partially remedied through a transfer or dismissal. In order to get the action to the right place, the nonbreaching party had to outlay money (for attorneys, travel, etc.). Thus, to fully compensate a nonbreaching party, a court must enforce the forum selection clause in the sense of using its procedural rules to directly or indirectly force the breaching party into the contractually designated forum, *and* must account for the monetary losses incurred by the nonbreaching party in getting there." (emphasis in original)).

[41] *Ingres*, 8 A.3d at 1146 (cleaned up).

[42] Dkt. 14 at 15.

19

damages measured by the expenses incurred litigating in the foreclosed forum. *Ingres* did not overrule *El Paso* on that issue.

*Ingres* did envision a different approach than *El Paso*. Before *Ingres*, Delaware courts were reluctant to issue anti-suit injunctions, citing the importance of comity and concomitant concern about giving offense to a sibling court. The litigation between Household International, Inc. and Eljer Industries, Inc. exemplified that cautious approach. When Eljer threatened Household with a lawsuit in Texas, Household filed a declaratory judgment action in Delaware. Eljer responded with the threatened Texas action and moved to dismiss the Delaware action on the basis of forum non conveniens. After declining to grant the motion to dismiss, Chancellor Allen also declined Household's request for a broad anti-suit injunction barring Eljer from proceeding in Texas. He explained that it was "the better practice to rely upon the comity of sister state courts to respect the judgment that has now been made concerning the feasibility of litigating these claims in the first filed jurisdiction."[43] He noted that although issuing an anti-suit injunction could be efficient, "the court that regularly issues injunctions under such circumstances risks giving substantial offense to the judicial systems of other states."[44] Taking that risk was generally unnecessary, because "most often the busy courts of other states, like the busy courts

---

[43] *Household Int'l, Inc. v. Eljer Indus., Inc.* (*Household I*), 1993 WL 133065, at *2 (Del. Ch. Apr. 22, 1993).

[44] *Id.*

20

of our own state, will be content to apply the generally recognized doctrine that priority attaches to first filed claims."[45] Two years later, however, after the Texas court had declined to stay its case and after further litigation over the forum issue (including an interlocutory appeal to the Delaware Supreme Court), Chancellor Allen concluded that he could "no longer justify staying [his] hand" and issued the anti-suit injunction.[46]

*Household* did not involve a forum selection clause. In an intervening decision, Chancellor Allen noted that Household lacked any right *not* to be sued in Texas that could support relief. He observed that "[s]uch a substantive legal right might be created, for example, by a contact provision designating a particular forum as the exclusive forum for resolution of disputes arising under the contract,"[47] and he posited that "cases in which parties agree as part of a negotiated contract to resolve disputes arising under the contract in a designated jurisdiction or tribunal would present a materially different issue than does this motion."[48]

In *El Paso*, the Delaware Supreme Court affirmed a decision that declined to specifically enforce a forum selection clause that called for litigating exclusively in

---

[45] *Id.*

[46] *Household Int'l, Inc. v. Eljer Indus., Inc.* (*Household III*), 1995 WL 405741, at *2, *3 (Del. Ch. June 19, 1995).

[47] *Household II*, 1994 WL 469169, at *4.

[48] *Id.* at *1.

21

the Court of Chancery. Rather than simply declining to issue the decree, the Court of Chancery held that it lacked subject matter jurisdiction to do so on two grounds. First, the court held that the parties could not confer jurisdiction on the Court of Chancery by agreement and had not shown an alternative basis for equitable jurisdiction. Second, the court reasoned that the defendant could raise the forum selection clause in the foreclosed forum and, if warranted, obtain an award of damages, resulting in an adequate remedy at law.[49]

The Delaware Supreme Court agreed on both points.[50] The justices also rejected the argument that the non-breaching party possessed a contractual right not to have to litigate any issues in the competing forum and therefore was suffering an ongoing and irreparable injury. The justices responded that because the parties lacked the power to vest jurisdiction in the Court of Chancery by agreement, the asserted contractual right was a nullity.[51]

Fifteen years later, in *Ingres*, this court was asked to issue injunctive relief to enforce a valid forum selection clause. Chief Justice Strine, then serving as a Vice Chancellor, adjudicated a series of disputes under three contracts. One counterparty sought to litigate substantially similar claims in a first-filed California action that

---

[49] *El Paso Nat. Gas Co. v. Transamerican Nat. Gas Corp.*, 1994 WL 248195, at *3 (Del. Ch. May 31, 1994), *aff'd,* 669 A.2d 36 (Del. 1995).

[50] *El Paso*, 669 A.2d at 40.

[51] *Id.* ("That argument, however, rests upon the faulty premise that jurisdiction in the Delaware Court of Chancery is a right that could be created by contract.").

22

was taking longer to reach resolution. Then-Vice Chancellor Strine permanently enjoined the counterparty from proceeding with the California action, explaining:

> Ingres agreed . . . that it would adjudicate all claims in tort or contract that relate to these agreements in a specific forum. By enjoining Ingres from proceeding in a different forum, I simply hold it to the promises it made-promises that remain binding upon it. Obviously, this order intends no disrespect to my distinguished judicial colleagues in California; rather, it is compelled by the parties' contracts. Therefore, I hereby enjoin the California Action in order to enforce the parties' clear choice to adjudicate disputes . . . either in Delaware or New York.[52]

He did not discuss *El Paso.*

On appeal, the Delaware Supreme Court affirmed "on the basis of and for the reasons assigned by the Court of Chancery."[53] The justices held that "where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause."[54] The Delaware Supreme Court also held that the traditional principle of deference to a first-filed action does not apply when the first-filed action breached a forum selection clause.[55] The justices did not discuss *El Paso* either.

---

[52] *CA, Inc. v. Ingres Corp.*, 2009 WL 4575009, at *48 (Del. Ch. Dec. 7, 2009), *aff'd*, 8 A.3d 1143 (Del. 2010).

[53] *Ingres*, 8 A.3d at 1145.

[54] *Id.*

[55] *Id.* 1145–46 (calling for enforcement "even if, absent any forum selection clause, the *McWane* principle [of deference to a first-filed action] might otherwise require a different result" because "[that] principle is a default rule of common law, which the parties to the litigation are free to displace by a valid contractual agreement.").

Five years later, in the *Carlyle* litigation, the Delaware courts filled that lacuna. A private equity fund had invested in a conglomerate under an agreement that identified Delaware as the exclusive forum for litigation. When the conglomerate sued in Kuwait, the fund sued in Delaware, sought an anti-suit injunction, and obtained a default judgment. The fund later sought to hold the conglomerate in contempt, causing the conglomerate to argue that the default judgment was void because, under *El Paso*, the Court of Chancery lacked jurisdiction to enforce a forum selection clause through an anti-suit injunction.

Chief Justice Strine, then Chancellor, rejected the conglomerate's argument.[56] After relying on *Ingres* for the general proposition that injunctive relief was available, he distinguished *El Paso* as a case involving an invalid forum selection clause that had sought to confer exclusive jurisdiction on the Court of Chancery:

> In other words, the Supreme Court found that the forum selection clause at issue in *El Paso* was itself an improper one because it ignored the limited jurisdiction given [sic] this court by our state's laws. But the forum selection clause in this case differs from that in *El Paso*, because the clause confers jurisdiction not on the Court of Chancery but on "the courts of the State of Delaware."[57]

---

[56] *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Gp. (Hldg.)*, 2012 WL 4847089 (Del. Ch. Oct. 11, 2012), *aff'd,* 67 A.3d 373 (Del. 2013).

[57] *Id.* at \*12 n.103.

Then-Chancellor Strine also relied on *ASDC*, where this court had distinguished *El Paso* on similar grounds.[58] The court in *ASDC* also held that when a party is "forced to prosecute any claims falling within that clause in a different forum, they will be deprived irreparably of the benefit of that bargain, regardless of whether they later prevail on the merits of that action."[59] The court reasoned that "the procession of a claim in an unwarranted forum poses a threat of irreparable harm warranting a preliminary injunction" and "[t]o hold otherwise in the circumstances of this case would render the broad language of the forum selection clause meaningless and deprive Plaintiffs of the benefit of their bargain."[60]

The Delaware Supreme Court affirmed then-Chancellor Strine's decision in *Carlyle* and also relied on *ASDC*. The justices distinguished *El Paso* as involving a facially invalid forum selection clause that gave the party seeking the anti-suit injunction "no basis to argue that it was suffering an irreparable injury by being compelled to litigate in Texas, because the rights it sought to enforce never legally existed."[61] And the justices quoted *ASDC* for the proposition that "to litigate the forum selection issue in Texas, when they bargained for a contractual provision that

---

[58] *ASDC Hldgs., LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at *4 (Del. Ch. Sept. 14, 2011).

[59] *Id.* at *8.

[60] *Id.* (collecting cases).

[61] *Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 382 (Del. 2013).

would avoid such a result, would deprive Plaintiffs of the benefit of their bargain and cannot be an adequate remedy at law."[62] The justices held as follows:

> Even if *arguendo,* the courts of Kuwait would enforce the forum selection clause in the Subscription Agreement, requiring Carlyle to enforce the forum selection clause in Kuwait, when Carlyle bargained for a Subscription Agreement provision that precluded such litigation, [sic] would deprive Carlyle of the benefit of its bargain. Therefore, that is not an adequate remedy at law.[63]

The court added that "[t]o the extent that our decision in *El Paso* is inconsistent with our holding in this case or *Ingres, El Paso* is overruled."[64]

*El Paso* did not conflict with *Ingres* or *Carlyle* as to a party's ability to recover a supplemental damages remedy to obtain complete relief for breach of a forum selection clause. Nothing in *Ingres* or *Carlyle* addresses the availability of damages; those decisions only addressed whether a damages award *alone* was an adequate remedy. But the fact that a damages remedy may be inadequate and equitable relief may be available does not mean that a plaintiff can only receive equitable relief. As discussed previously, long settled principles of equity recognize that granting injunctive relief or specific performance does not foreclose an award of supplemental damages.[65] To the contrary, a court of equity can both issue a decree of specific

---

[62] *Id.* at 384.

[63] *Id.* at 385.

[64] *Id.*

[65] *See supra* Part II.C.1.

performance and "award such legal damages as have resulted from delay in performance of the contract."[66]

Rather than overruling *El Paso* on the availability of damages for breach of a forum selection clause, *Ingres* and *Carlyle* overruled *El Paso* on a different point. Both *Ingres* and *Carlyle* recognized that irreparable harm results from the defeated expectancy of not having to litigate in the foreclosed forum in the first place. That harm deserves its own remedy in the form of equitable relief, contrary to what *El Paso* held in ruling that the Court of Chancery lacked jurisdiction to issue an anti-suit injunction. But *Ingres* and *Carlyle* did not say that the equitable remedy provides complete relief. A party also deserves a remedy for the defeated expectancy of not having to expend resources litigating in the foreclosed forum. *Ingres* and *Carlyle* left open the ability of a court to award damages in addition to equitable relief. *Ingres* and *Carlyle* did not overrule *El Paso* on that issue.

*Ingres* and *Carlyle* also implicitly overruled *El Paso* on the preferred method for showing respect and comity to sibling courts. The Delaware courts had shown respect and comity by permitting a sibling court to consider first whether to stay a competing proceeding, rather than taking the decision away from the sibling court. But when parties have agreed to an exclusive forum selection clause, it shows disrespect to the sibling court *not* to enforce the forum selection clause and instead force that court to expend judicial resources making a decision it otherwise would not

---

[66] Pomeroy, *supra* note 37, § 237b.

27

have to make. In that context, showing respect and comity requires issuing the anti-suit injunction, rather than offloading the work of making that decision. But that change in approach does not eliminate a party's ability to recover damages for the loss of the expectancy that it would not have to expend resources litigating in the impermissible court. Neither *Ingres* nor *Carlyle* ruled out that additional remedy.

Namdar is thus wrong to argue that injunctive relief is the exclusive remedy for breach of a forum selection clause. Injunctive relief—or dismissal of the action by the sibling court—provides forward-looking relief. It does not address the damages suffered before obtaining that relief. The Company can maintain its claim for those damages.

## D.     The American Rule Argument

Namdar next argues that to allow the Company to recover expenses for the Puerto Rico Action would violate the American Rule. "Under the American Rule and Delaware law, litigants are normally responsible for paying their own litigation costs."[67] Relying on *El Paso*, *O'Steen* held that "an award of [forum selection clause] damages does not contravene the American Rule,"[68] but the decision did not elaborate on its reasoning. That bottom line conclusion is nevertheless correct.

As discussed previously, a distinction exists between the primary relief that a party seeks for breach of contract and the enforcement expenses the party incurs

---

[67] *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

[68] *O'Steen*, 2006 WL 2788414, at *4.

28

obtaining the primary relief. The American Rule bars a party from recovering enforcement expenses unless an exception applies. It does not bar a party from recovering primary relief.[69]

As an example, consider a claim for damages resulting from a target company's breach of a representation in a sale agreement. As primary relief, the buyer might seek damages measured by the difference between the target as represented and the target as acquired. The buyer also might seek enforcement expenses, but unless the contract provided specifically for their recovery (as with a prevailing party provision) or unless another exception to the American Rule applied (such as the bad faith exception), the buyer could not recover them.

Sometimes, expenses provide the measure of the damages a party seeks as primary relief. When that is the case, the American Rule does not apply. The American Rule bars a party from recovering the enforcement expenses incurred securing primary relief. The American Rule does not defeat a party's ability to obtain damages, even if those damages are measured by an amount of litigation expenses.

Envision an underlying proceeding that gives rise to a covered person's right to advancement or indemnification. Imagine that the company refuses to fulfill its obligation. The covered person sues to enforce its right and proves breach. The damages for breach are measured by the expenses incurred in the underlying

---

[69] For a conceptually similar analysis that distinguishes among direct damages, consequential damages, and enforcement costs, see Monestier, *supra* note 3, at 309–15.

proceeding. The expenses incurred securing those amounts are enforcement expenses. That the court measures the primary relief in terms of expenses in the underlying proceeding does not violate the American Rule.

That example is apt because in the advancement and indemnification context, the Delaware courts directly confronted whether a party could recover enforcement expenses—called "fees-for-fees"—without violating the American Rule. In a series of decisions, this court had no difficulty awarding primary relief measured by the expenses incurred in the underlying action, but applied the American Rule to bar the recovery of fees-for-fees.[70] The Delaware Supreme Court reached a different conclusion, holding that a party who succeeds on the merits in enforcing an advancement or indemnification right is entitled to indemnification where an agreement makes mandatory the permissive indemnification available under Section 145(a) or (b).[71] In other words, the Delaware Supreme Court held that the mandatory indemnification provision operated as an exception to the American Rule. No one ever suggested that the American Rule barred the primary relief.

A breach of a forum selection clause involves a similar distinction between primary relief and enforcement expenses. The expenses incurred in the foreclosed forum provide the measure of damages the non-breaching party suffered from the

---

[70] *See generally Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 178, 182 n.17 (Del. Ch. 2003) (noting that a series of Court of Chancery decisions declined to award fees-for-fees, citing justifications including the American Rule).

[71] *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 560–62 (Del. 2002).

30

breach of the contractual right not to be sued there. Those expenses are a measure of damages constituting primary relief. The non-breaching party *also* may have incurred enforcement expenses to recover the primary relief. Absent an exception, the American Rule forecloses recovery of the enforcement expenses. It does not prevent the recovery of the primary relief, even though litigation expenses provided the measure of damages.

To be sure, the nature of a forum selection clause can cause the distinction between primary relief and enforcement expenses to blur. Assume, for example, that a non-breaching party moves to dismiss an action in a foreclosed forum on the basis of a forum selection clause. One can argue that all the expenses incurred in the foreclosed forum are enforcement expenses leading to the primary relief of dismissal. And if a party moved to dismiss an action on the basis of forum non conveniens or other non-contractual or statutory doctrine, then that reasoning would be correct. But the existence of a forum selection clause changes the analysis.

The forum selection clause establishes a contractual right not to be sued in the foreclosed forum. That clause entitles its beneficiary to expect *both* that it would not have to litigate in a foreclosed forum *and* that it would not have to incur expenses there. To fulfill the latter expectation, the beneficiary can recover damages measured by the expenses incurred.

The beneficiary of the forum selection clause still incurs enforcement expenses subject to the American Rule, but they comprise the expenses incurred to recover the

damages. The American Rule bars recovery of those expenses unless an exception applies.

In this case, the Company was a beneficiary of the Forum Selection Clause. The Company was contractually entitled not to be sued except in Delaware and not to incur expenses litigating elsewhere. When Namdar filed the Puerto Rico Action, the Company sought dismissal to enforce its expectation of not having to litigate there. The Puerto Rico Court addressed that issue by dismissing the Puerto Rico Action, but that ruling did not address the Company's expectation that it would not have to incur expenses litigating in a foreclosed forum. The Company continues to have a claim for breach of the Forum Selection Clause that can support an award of damages measured by the Puerto Rico Expenses. The American Rule does not apply to that damages measure because the damages are just that: primary relief in the form of expectation damages, rather than a form of fee shifting.

There are still enforcement expenses to which the American Rule could apply. Those are the expenses the Company incur here to recover damages for breach of the Forum Selection Clause. The American Rule bars the Company from those expenses unless an exception applies.

Parties can contract around the American Rule, and the parties did so here. The Agreement states: "In the event of a breach or threatened breach by [Namdar] of any of the provisions of this Agreement, [Namdar] hereby consent[s] and agree[s] that . . . [Namdar] shall be responsible for payment of the Company's attorneys' fees and costs incurred in the course of enforcing the terms of the Agreement, including

demonstrating the existence of a breach and any other contract enforcement efforts" (the "Fee-Shifting Provision").[72] Although the American Rule ordinarily would preclude the Company from recovering the enforcement expenses incurred in this action, the Fee-Shifting Provision changes that outcome.

The American Rule does not warrant dismissal of the Company's counterclaim for breach of the Forum Selection Clause.

## E.     The Lost-Your-Chance Defense

Namdar next argues that if the Company wanted to recover the Puerto Rico Expenses, the Company had to seek them from the Puerto Rico Court. Namdar suggests that the Company could have asserted its claim for breach of contract there, sought an award of costs there as the prevailing party, or sought an award of expenses there.

The Company did not have to assert its claim for breach of contract in the Puerto Rico Action. The Company contracted for the ability to litigate in Delaware.[73] If the Company had to assert its counterclaim in the Puerto Rico Action, then that rule would deprive the Company of the contractual right it bargained for.

---

[72] Agr. § 15.

[73] Recall that although Namdar agreed to sue exclusively in Delaware, the Company reserved its right to sue in Puerto Rico, Delaware, or wherever Namdar could be found. The Company therefore did not have to litigate in the Puerto Rico Court. It could choose to litigate here.

33

The Company also did not have to seek expenses under Rules of Civil Procedure of Puerto Rico 44.1(a). That rule is a standard provision entitling a prevailing party to costs:

> Costs shall be allowed to the party prevailing in the action or favored by the judgment on appeal or review, unless otherwise provided by statute or by these rules. The costs which may be allowed by the court are those expenses necessarily incurred in prosecuting an action or proceeding which, as prescribed by the statute or in the discretion of the court, one of the parties should reimburse to the other.[74]

Rule 44.1(b) requires that the party claiming costs must serve and file a list of all expenses claimed "[w]ithin ten (10) days after a copy of the notice of judgment is filed in the record of the case."[75] Rule 44.1(d) further provides that "[w]here a party or party's counsel has acted obstinately or frivolously, the court, in its judgment, shall impose on such person the payment of a sum in attorney's fees which the court may deem to correspond to such conduct."[76]

Any prevailing party can invoke Rule 44.1. The Company could have sought costs under that rule, but the Company also bargained for the Forum Selection Clause, and it could sue for breach of that clause as an alternative remedy. To force the Company to invoke Rule 44.1 would equate its status with a litigant who had not secured a contractual right.

---

[74] P.R. R. Civ. P. 44.1.

[75] *Id.*

[76] *Id.*

34

The Company also could have sought attorneys' fees in the Puerto Rico Action under Rule 44.1. Once again, any prevailing party could make such an application, so forcing the Company to pursue either route would equate the Company with a party that had not bargained for the Forum Selection Clause. Not only that, but pursuing attorneys' fees under Rule 44.1 would have required the Company to show that Namdar litigated "obstinately or frivolously." The Company did not have to make that higher showing. It bargained for a contractual right and was entitled to enforce it.

If the Company had sought and obtained expenses under Rule 44.1, then any amounts would have operated as a setoff against a recovery here. But the Company was not required to invoke Rule 44.1. The Company could stand on its contractual rights.

The Company also could have filed an application in the Puerto Rico Action under the Fee-Shifting Provision. But again, the Company was not required to do that. The Company had bargained for the right not to be sued anywhere other than in Delaware. The Company had also bargained for the right to assert its own claims in Delaware. The Company had no obligation to give up those rights and pursue a fee application in Puerto Rico.

The Forum Selection Clause drives this analysis. As Chancellor Allen explained in the *Household* litigation, such a clause gives a party the right to be free

from suit in a foreclosed jurisdiction.[77] Once Namdar breached the Forum Selection Clause, the Company could sue for breach and recover damages, and the Company could choose not to litigate in the Puerto Rico Action that Namdar never should have filed in the first place.

Without the Forum Selection Clause, the Company would not have had a right to be free from the Puerto Rico Action. In that scenario, the Company's only option would have been to seek its expenses in that action, whether under Rule 44.1 or through another mechanism. The Company could not have sued here and asked this court to award expenses under Rule 44.1, under the bad faith exception to the American Rule, or even under the Fee-Shifting Provision. It would be improper for this court to adjudicate whether a party's conduct before another court met the standard of conduct specified in Rule 44.1, rose to the level of bad faith, or was otherwise sanctionable. Those are questions for the court that oversaw the litigation.[78] Likewise, absent the right to be free from suit in Puerto Rico, the Company would have to invoke the Fee-Shifting Provision in the court where it prevailed.

_____

[77] *See supra* Part II.C.2.

[78] *Cf. SOC–SMG, Inc. v. Day & Zimmermann, Inc.*, 2010 WL 3634204, at *3 (Del. Ch. Sept. 15, 2010) (declining to address claims of discovery abuse and attorney misconduct in an arbitration; and noting that "[t]o have a Delaware court inject itself into [such] situation[s] would show disrespect toward the Arbitration panel, which has the broad authority to address these issues in the first instance, and would be contrary to our state's—and our nation's—strong public policy favoring arbitration." (footnotes omitted)).

But the Forum Selection Clause changes the calculus. That clause created a legal right for the Company to be free from suit anywhere other than in Delaware. That clause allows the Company to assert its claim for breach in any contractually permitted jurisdiction, including Puerto Rico.[79] Having opted to assert that claim here, the Company can invoke the Fee-Shifting Provision, but only for the expenses incurred here.

To argue for the contrary result, Namdar cites *O'Leary*.[80] In that decision, the plaintiffs sued in a California court, which dismissed their case based on an exclusive forum selection clause selecting the courts of Delaware. The defendants initially sought expenses under California's version of Rule 44.1, then abandoned their motion. When the plaintiffs refiled in Delaware, the defendants asserted a counterclaim seeking damages for breach of the forum selection clause.[81] The *O'Leary* court held that the defendants waived that claim by filing and then failing to pursue their California application. The court reasoned that the defendants had two "inconsistent remedies"—an application under the California rule or a claim for breach of contract—and had to elect one or the other.[82]

---

[79] Agr. § 18.

[80] *O'Leary v. Telecom Res. Serv., LLC*, 2011 WL 2992099 (Del. Super. Ct. July 25, 2011).

[81] *See id.* at *1.

[82] *Id.* at *4–5.

*O'Leary* is distinguishable because the Company did not first pursue then abandon a rule-based application in Puerto Rico. More broadly, however, *O'Leary* reasoned that a rule-based application and a claim for breach of contract are inconsistent remedies. That is not so, just as invoking a contractual fee-shifting provision is not inconsistent with an application for costs by rule or an application for expenses under the bad faith exception to the American Rule. A party with a right to fee-shifting could assert all three, or opt for one or two. The rights are separate and distinct.[83]

The Company did not lose its ability to claim breach of the Forum Selection Clause by failing to file that claim in the Puerto Rico Court or move for expenses there. Nothing required that the Company pursue one remedy rather than another.

---

[83] As an alternative basis for denying summary judgment, the *O'Leary* court reasoned that the defendants could have breached the contract first, at which point their antecedent breach would have freed the plaintiffs to sue in California. *Id.* at *5. That analysis has two problems. First, it would allow the plaintiffs to relitigate the California court's decision to enforce the forum selection clause. Second, it would equate a breach of the contract as a whole with a breach of the forum selection clause. By analogy to the well-developed law governing arbitration clauses (a specific type of forum selection clause), the clause operates as a mini-contract (the forum selection contract) within a larger contract (the container contract). *See Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 752 (Del. Ch. 2023). A party might have induced the counterparty to execute the container contract through fraud, but that would not affect the forum selection contract unless the fraud went directly to the latter contract. *Id.* (discussing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). A court therefore can enforce a forum selection clause notwithstanding the alleged fraudulent inducement of the container contract. The same reasoning applies to a claim of antecedent breach. A contrary rule would be unworkable, as allegations of fraud or breach could enable a party to litigate in an impermissible forum, with the parties only learning after a decision on the merits where they had to litigate in the first place.

Just as a plaintiff is the master of its complaint and can choose the claims to assert, the Company could decide which remedy to pursue. The Company properly exercised its contractual prerogative to assert its claim here.

## F. The Only-A-Remedy Defense

Finally, Namdar argues that an award of fees is a remedy not a cause of action. Namdar observes "that a party may, on rare occasions, mistakenly plead a remedy as an enumerated cause of action"[84] and that "[d]ismissing counts that seek remedies instead of asserting claims is useful in 'clean[ing] up the pleadings.'"[85] Those principles do not apply here.

The Company has asserted a well-known cause of action: breach of contract. The Company seeks monetary damages measured by the Puerto Rico Expenses. The Company has not incorrectly framed a remedy as a cause of action.

## G. Policy Considerations

Lurking behind the questions of contract law are policy considerations. From a societal perspective, should a party be able to recover damages for breach of a forum selection clause? When the parties are sophisticated and the breach clear, the answer is yes.

---

[84] *VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *6 (Del. Ch. Apr. 28, 2014).

[85] *iBio, Inc. v. Fraunhofer USA, Inc.*, 2020 WL 5745541, at *12 (Del. Ch. Sept. 25, 2020) (quoting *Quadrant Structured Prod. Co. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014)).

Parties regularly fight over forum selection clauses. As one scholar notes:

> [P]arties often breach forum selection clauses by suing in a jurisdiction other than the one nominated in the clause. . . . For instance, a party may perceive that a non-chosen forum provides it with a leg up in litigation–perhaps because it offers better law, a better jury pool, better judges, and so on. Thus, the violating party may hope that the non-chosen court will proceed with the litigation. . . . In a related vein, a party may also violate a forum selection clause to protract litigation, to cause the other party to expend resources, and to secure a favorable legal or settlement result. Here, the goal is not so much actually litigating in the alternative forum, but instead placing strategic obstacles in the way of one's opponent right from the beginning.[86]

This court sees those tactics firsthand and devotes considerable resources to forum-related disputes.

For the judiciary, those resources are ill-spent. The judiciary has an interest in the fair and efficient administration of justice. Otherwise, it matters not where a dispute is heard. "[T]here is here no competition between jurisdictions, as counsel seeks to imply, only maneuvering by private parties apparently seeking perceived advantage."[87]

---

[86] Monestier, *supra* note 3, at 280–81; *accord* Tan, *supra* note 4, at 625 ("There is a strong temptation to breach [forum selection clauses] and secure tactical benefits by commencing proceedings elsewhere because the choice of forum often means the difference between winning and losing the suit (and also winning and losing by how much)."). The risks are particularly high for arbitration clauses when parties have agreed to a delegation clause giving the arbitrator the authority to determine substantive arbitrability. In that setting, a court must refer any assertion of arbitrability to the arbitrator, even if wholly groundless. *See Fairstead*, 288 A.3d at 753 (discussing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019)). A party wishing to achieve delay can search for a contract containing a suitable arbitration clause, cite it, and force a detour into arbitration.

[87] *Household III*, 1995 WL 405741, at *2.

If a party who sues in a foreclosed forum faces only the risk that it might have to sue where it agreed to, then parties will take the shot.[88] If parties face an additional consequence, such as damages, then parties should be more conservative. That may result in some parties opting to litigate some claims in a contractually selected forum when a court would agree that they could be litigated elsewhere, but that seems like a small price to pay to reduce the overall squabbling over where to sue.

Of course, "[n]ot all breaches of forum selection clauses are necessarily nefarious."[89] "There may be a genuine dispute as to whether a clause is mandatory or permissive and/or whether a certain claim falls within the scope of the clause."[90] The answer to that problem is to draft better forum selection clauses. The prospect of damages should flow back into the contracting stage, resulting in clearer clauses.

There are competing policy concerns. Contracts of adhesion and scenarios involving disparate bargaining power introduce the risk that weaker parties (like consumers or line employees) may agree to a disadvantageous forum. If they seek in good faith to sue elsewhere, and if a court disagrees, then the weaker party might

---

[88] *See* Monestier, *supra* note 3, at 300–02 (explaining that without a damages award, rational actors will breach forum selection clauses more).

[89] *Id.* at 281.

[90] *Id.* Other reasons might include ignorance that any applicable clause exists or a good-faith belief that a clause is unreasonable. *See id.* at 282–83.

face the double-whammy of being relegated to the disadvantageous forum and owing damages for breach of the forum selection clause. That could work an injustice.[91]

Over the past fifteen years, Delaware has proclaimed its contractarian bona fides with increasing insistence.[92] That contractarian approach calls for enforcing agreements strictly and suggests that damages for breach of a forum selection clause should be available in many situations.

The judiciary can, however, address understandable concern about parties too readily suffering damages awards for breaching forum selection clauses. Insight can be found in cases addressing whether to allow a party to recover damages for breach

---

[91] *See generally id.* at 321–24 (arguing for allowing courts to forgo awarding damages for breach of forum selection clauses in consumer contracts).

[92] *E.g.*, *Sunder Energy, LLC v. Jackson*, 332 A.3d 472, 487 (Del. 2024) ("Delaware is a contractarian state that holds parties' freedom of contract in high regard."); *XRI*, 304 A.3d at 919 (citing the "strong contractarian policies embedded in Delaware law generally"); *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323, 355 (Del. 2022) ("Delaware is a contractarian state."), *abrogated in part on other grounds by* 84 Del. Laws ch. 98, § 12 (July 17, 2023). Setting aside a handful of citations to an article that incorporated the term "contractarian" in its title, the judicial embrace of the concept and connotations of contractarianism represents a relatively recent phenomenon. The Court of Chancery first used the term in 2010. *Ashall Homes Ltd. v. ROK Ent. Gp. Inc.*, 992 A.2d 1239, 1254 n.71 (Del. Ch. 2010). Not until the following year did the court assert that Delaware law "is more contractarian than that of many other states." *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *12 (Del. Ch. July 11, 2011). The Delaware Superior Court first deployed the concept in 2020. *See AssuredPartners of Virginia, LLC v. Sheehan*, 2020 WL 2789706, at *15 (Del. Super. Ct. May 29, 2020). The 2022 decision in *Stream TV* marked its first appearance in a Delaware Supreme Court opinion.

of a covenant not to sue, where courts outside of Delaware have split.[93] Importantly ,

some courts have developed a middle position between the all-or-nothing antipodes

---

[93] The Delaware courts have not addressed a claim for breach of a covenant not to sue, but this court has addressed the related claim for breach of a release. Although the idea of breaching a release might initially seem odd, this court has held that a release is a contract like any other, so a released party can claim breach and potentially recover damages when the releasing party asserts a claim it agreed to give up. *See Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.,* 2015 WL 5278913, at *15 (Del. Ch. Sept. 10, 2015) ("The Releases are contracts; breaching those contracts by asserting a released claim conceivably could give rise to a cause of action for damages, including, for example, attorneys' fees and costs that Plaintiffs otherwise would not have incurred if Defendants had complied with the Releases."). In Count II, the Company asserted a counterclaim for breach of a release in the Agreement. Namdar moved to dismiss that count under Rule 12(b)(6), but it states a claim for relief under *Moonmouth*.

Outside of Delaware, authorities have treated covenants not to sue and releases interchangeably for purposes of a party's ability to recover damages for their breach. An annotation from 1993 asserts that a majority of decisions bars the recovery of damages. *See* Sonja J. Soehnel, Annotation, *Recovery of Attorneys' Fees and Costs of Litigation Incurred as Result of Breach of Agreement Not to Sue*, 9 A.L.R.5th 933 (1993). But that assertion rests on counting both decisions addressing express provisions and cases where the commitment was implied or generic. *See id.* §§ 8–9. To my eye, there does not appear to be a clear majority rule across jurisdictions that have addressed express provisions. There instead appears to be a shifting trend across time. Early decisions saw the issue as a simple question of breach of contract. *E.g.*, *Anchor Motor Freight, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union No. 377*, 700 F.2d 1067, 1072 (6th Cir. 1983) (federal law), *cert. denied*, 464 U.S. 819 (1983); *Widener v. Arco Oil & Gas Co., Div. of Atl. Richfield Co.*, 717 F. Supp. 1211, 1217 (N.D. Tex. 1989) (same). Later decisions declined to award damages measured by litigation expenses, generally relying on the American Rule. *E.g.*, *Bunnett v. Smallwood*, 793 P.2d 157, 161 (Colo. 1990) (Colorado law); *Shumate v. Lycan*, 675 N.E.2d 749, 755 (Ind. Ct. App. 1997) (Indiana law). More recent decisions have returned to the breach-of-contract framework and explained why a party can recover damages measured by litigation expenses, notwithstanding the American Rule. *E.g.*, *Pro Done, Inc. v. Basham*, 210 A.3d 192, 204 (N.H. 2019) (New Hampshire law); *Bolton v. McKinney*, 855 S.E.2d 853, 856–57 (Va. 2021) (Virginia law).

by considering factors like the relative clarity of the position, the strength of the party's arguments against its application, and whether the party who breached the clause appeared to be acting in a bad faith effort to increase costs.[94]

This court has similar tools available. A court could take the risk of a damages award into account when analyzing the reasonableness of the forum selection clause.[95] A court could decline to award damages where a forum selection clause was ambiguous. A court of equity could also limit the recovery for a party who acted inequitably, such as by advancing implausible arguments that suggest its reliance on a forum selection clause cloaked an attempt to drive up the other side's costs.[96]

A court likewise could account for the existence of competing forum selection clauses in different agreements. Sometimes, one party rationally seeks to localize

---

[94] *E.g.*, *Dallas Gas P'rs, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 159 (5th Cir. 2013) (permitting recovery of damages for breach of covenant not to sue measured by litigation expenses where "the lawsuits were clearly within the scope of the release and covenant not to sue" and thus were "in obvious breach" (internal quotation marks omitted)); *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002, 1008 (2d Cir. 1966) ("In the absence of contrary evidence, sufficient effect is given the usual covenant not to sue if, in addition to its service as a defense, it is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith—clearly not the situation here."); *Princeton Digit. Image Corp. v. Off. Depot Inc.*, 2017 WL 10765194, at *5 (D. Del. Aug. 1, 2017) (applying New Jersey contract law); *Riveredge Assocs. v. Metro. Life Ins.*, 774 F. Supp. 897, 901–02 (D.N.J. 1991) (same); *Borbely v. Nationwide Mut. Ins.*, 547 F. Supp. 959, 980 (D.N.J. 1981) (same).

[95] *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).

[96] *See* Tan, *supra* note 4, at 648–49 (citing considerations a court could take into account when deciding to enforce a forum selection clause).

litigation in a single forum, while the other—often better resourced—party insists on enforcing a forum selection clause that Balkanizes the dispute. Technically, a court is not bound by a forum selection clause. Judicial resources are a limited public good, and a court need not allow parties to consume more than their fair share, even when they have contracted—intentionally or unintentionally—for a multitude of forums.[97] But if the court opts to enforce the parties' competing agreements, then a court need not impose a damages award on a party that attempted to corral the litigation in a single court.[98]

This case involves sophisticated parties who negotiated the Agreement and agreed on the bespoke terms of the Forum Selection Clause. They chose Delaware law to govern their disputes, opting into its contractarian framework. In this case,

---

[97] *E.g.*, *IMO Ronald J. Mount 2012 Irrevocable Dynasty Tr.*, 2016 WL 297655, at *5 (Del. Ch. Jan. 21, 2016) ("Unnecessarily depleting financial resources should be avoided, and litigating in more than one court will inevitably increase costs to some extent."); *Rivest v. Hauppauge Digit., Inc.*, 2022 WL 4533801, at *3 (Del. Ch. Sept. 28, 2022) ("[Counsel] should not be burdening the court and consuming judicial resources that are better devoted to other matters."); *accord Smith v. Pinkney*, 2018 WL 4773551, at *4 (N.D. Ohio Oct. 13, 2018) ("The Court has a responsibility to prevent litigants from overwhelming judicial resources that are also needed by others."); *Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, 101 F. Supp. 3d 856, 873 (C.D. Cal. 2015) (granting plaintiff's motion for default judgment; and noting how "[d]efendants have consumed more than their fair share of judicial time and resources and threatened the Court's ability to manage its docket"); *Mann v. Taser Int'l, Inc.*, 2008 WL 11423997, at *1, *1 n.1 (N.D. Ga. July 8, 2008) (denying plaintiffs' motion for clarification; and noting that "[t]he Court has limited resources, and this case already has consumed more than its fair share of those resources").

[98] *Vivint* provides the quintessential example of a court considering this concern. *See supra* note 7.

the policy interests support permitting the Company to recover damages for breach of the Forum Selection Clause.

## III.   CONCLUSION

The Company has stated a claim for breach of the Forum Selection Clause and can recover damages measured by the Puerto Rico Expenses. The Company has also stated a claim to recover its enforcement expenses here under the Fee-Shifting Provision. Namdar's motion to dismiss is denied as to Count I.